## SECURITIES AND EXCHANGE COMMISSION, Plaintiff–Appellee,

v.

## Joseph C. PALMISANO, Defendant–Appellant.

### Docket No. 96–6197.

United States Court of Appeals, Second Circuit.

Submitted Nov. 18, 1997.

Decided Feb. 4, 1998.

Richard H. Walker, General Counsel, Washington, DC (Eric Summergrad, Principal Asst. General Counsel, Mark Pennington, Senior Litigation Counsel, Christopher Paik, Senior Counsel, Paul Gonson, Solicitor, Washington, DC, on brief), for Plaintiff-Appellee.

Joseph C. Palmisano, Fort Worth, TX, Defendant-Appellant pro se.

Before: KEARSE and CARDAMONE, Circuit Judges, and LEISURE, District Judge*.

KEARSE, Circuit Judge:

Defendant pro se Joseph C. Palmisano appeals from so much of a judgment of the United States District Court for the District of Vermont, Franklin S. Billings, Jr., *Judge*, as orders him, in this civil enforcement action brought by the Securities and Exchange Commission ("SEC"), to disgorge approximately $9.2 million and to pay an additional civil penalty of $500,000, for violations of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77a *et seq.* (1994), the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78a *et seq.* (1994), and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5 (1997). On appeal, Palmisano contends principally that the disgorgement order and the civil penalty violate the Double Jeopardy Clause of the Fifth Amendment because he had been punished for the same conduct in a criminal proceeding. For the reasons set forth below, we modify the judgment in one respect and, as modified, we affirm.

---

* Honorable Peter K. Leisure, of the United States District Court for the Southern District of New York, sitting by designation.

## I. BACKGROUND

Prior to 1994, Palmisano was an attorney who specialized in bankruptcy law. From at least December 1987 through November 1992, he operated a fraudulent Ponzi-type scheme in which he induced some 90 persons to invest with him a total of approximately $7.9 million. Palmisano solicited investments from his clients and others for the avowed purpose of purchasing property of bankrupt or distressed companies, which would then be sold at a profit. He represented that the invested funds would be placed in a separate escrow account, and he told some investors that their investments involved "no risk" to principal and would produce tax-free returns of 20–30 percent per year. In fact, there was no reasonable basis for these representations. Palmisano did not invest the money as promised but instead used it for his own personal purposes and used some investors' money to make distributions to other investors in order to perpetuate the scheme.

Palmisano gave his investors various written instruments representing their investments. At the time, there was no registration statement in effect with the SEC.

In July 1994, the United States filed a 40-count indictment charging Palmisano with a variety of criminal conduct in connection with the above scheme. The present civil enforcement action was filed by the SEC on the same day. The civil complaint alleged the sale of unregistered securities, in violation of §§ 5(a) and (c) of the Securities Act, 15 U.S.C. §§ 77e(a), (c), and the sale of securities by means of fraud and misrepresentation, in violation of § 17(a) of the Securities Act, 15 U.S.C. § 77q(a), and of § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5. It requested principally that the district court enjoin Palmisano from violating the securities laws, order disgorgement of all gains he derived from his unlawful conduct, and impose a monetary penalty on him pursuant to the remedial provisions added to the Securities Act and the Exchange Act by the Securities Enforcement Remedies and Penny Stock Reform Act of 1990 ("Remedies Act"),

Pub.L. No. 104–429, §§ 101, 201, 104 Stat. 931, 932–33, 936 (codified at 15 U.S.C. §§ 77t(d), 78u(d)(3)).

In the criminal case, Palmisano pleaded guilty in September 1995 to 44 counts of a 45–count superseding indictment, including counts of mail fraud, wire fraud, money laundering, and securities fraud. The securities fraud counts were based on the same conduct that was alleged in the civil complaint. Following his plea of guilty, Palmisano was sentenced principally to 188 months' imprisonment, to be followed by a five-year term of supervised release, and was ordered to make restitution to his victims in the amount of $3,779,868.49. In addition, property involved in Palmisano's money-laundering violation, to wit, $700,000 and all interest and proceeds traceable thereto, was ordered forfeited to the United States.

In the meantime, the SEC had moved for summary judgment in the present civil action, and its motion had not been decided when Palmisano pleaded guilty in the criminal case. Following the entry of the guilty plea, the SEC argued that it was entitled to summary judgment in this case on the ground of collateral estoppel. The magistrate judge to whom the summary judgment motion was referred recommended granting the motion on that ground. Although Palmisano objected on the basis that the facts of the criminal and civil actions were different, and on other grounds not at issue here, the district court granted the motion on the basis of the collateral estoppel effect of Palmisano's plea of guilty to the securities fraud charges.

Judgment was entered in the present action, enjoining Palmisano from future securities law violations, ordering him to disgorge approximately $9.2 million, comprising $6,169,291.98 in unlawful gains plus $2,989,086.42 in prejudgment interest, and ordering him to pay a $500,000 civil penalty.

## II. DISCUSSION

Palmisano has appealed from so much of the judgment as imposes the $9.2 million disgorgement obligation and the $500,000 civil penalty, contending principally that each of those sanctions, in light of the punishment imposed in his criminal case, violates his right to be free from double jeopardy. Assuming that Palmisano has not waived these contentions, we conclude that they are without merit.

### A. The Possibility of Overlapping Remedies

 The SEC contends that Palmisano's present double jeopardy challenges have been waived because he did not assert them in the district court. Although Palmisano maintains that he did raise these arguments in the district court, we see no indication in the record that this is so. We generally will not consider a contention made for the first time on appeal unless consideration is necessary to avoid a manifest injustice. *See, e.g., Singleton v. Wulff,* 428 U.S. 106, 120–21, 96 S.Ct. 2868, 2877–78, 49 L.Ed.2d 826 (1976); *Mortise v. United States,* 102 F.3d 693, 697 (2d Cir.1996). The unpreserved issue will normally be considered only "when we think it necessary to remedy an obvious injustice." *Greene v. United States,* 13 F.3d 577, 586 (2d Cir.1994).

Whether or not Palmisano failed to make his double jeopardy arguments in the district court, there is one aspect of the present judgment that warrants consideration here. The present judgment does not indicate how the disgorgement ordered is to be affected by Palmisano's payment of the restitution ordered in the criminal proceeding, which raises the possibility that the total amount that Palmisano is to pay in disgorgement and restitution could exceed his unlawful gains. The SEC, in its brief on this appeal, has conceded that payments by Palmisano to his victims pursuant to the restitution order in the criminal case should be credited toward the disgorgement ordered here: "Defendant is only required to give back the proceeds of his securities fraud once. Thus, to the extent he pays back the victims of his securities fraud as a result of the criminal restitution order, those payments should be credited towards the disgorgement award." (SEC brief on appeal at 13 n. 11.)

We conclude that that acknowledged limitation should be specified in the present

judgment. Accordingly, we modify the judgment to provide that to the extent that Palmisano pays or has paid restitution as ordered in the criminal judgment, such payments will offset his disgorgement obligation under the present judgment.

## B. *The Principal Double Jeopardy Contentions*

■ Palmisano's principal double jeopardy arguments are that because he was subjected to sanctions in his criminal case, his right to be free from double jeopardy is violated by the requirements in this action for disgorgement and payment of a civil fine. In support of these arguments, he relies primarily on *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), which held that civil penalties constitute punishment within the meaning of the Double Jeopardy Clause if they are "overwhelmingly disproportionate" to the harm suffered by the government. *Id.* at 449, 109 S.Ct. at 1902. Even assuming that Palmisano's contentions could have been viewed as valid under *Halper*, they are plainly meritless in light of *Hudson v. United States*, —— U.S. ——, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), in which the Supreme Court largely "disavow[ed] the method of analysis used in *United States v. Halper*," *Hudson v. United States*, —— U.S. at ——, 118 S.Ct. at 491, and reaffirmed the traditional rule that the Double Jeopardy Clause prohibits multiple sanctions for the same offense only if those sanctions are "*criminal* punishments," *id.* at ——, 118 S.Ct. at 493 (emphasis in original). Under the traditional analysis, there was no double jeopardy here.

■ In protecting an already-punished person against further punishments, the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions "that could, in common parlance, be described as punishment," *id.* at ——, 118 S.Ct. at 493 (internal quotation marks omitted); rather it "protects only against the imposition of multiple *criminal* punishments for the same offense" in successive proceedings, *id.* (emphasis in original). Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory interpretation.

*See, e.g., id.*; *Helvering v. Mitchell*, 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938). Thus, the first question the court must ask is "whether the legislature, 'in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other.'" *Hudson v. United States*, —— U.S. at ——, 118 S.Ct. at 493 (quoting *United States v. Ward*, 448 U.S. 242, 248, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980)). If the court determines that the legislature has indicated an intention to establish a sanction that is civil, the court must then ask whether the statutory scheme is "so punitive either in purpose or effect," as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty." *Hudson v. United States*, —— U.S. at ——, 118 S.Ct. at 493 (internal quotation marks omitted); *see Rex Trailer Co. v. United States*, 350 U.S. 148, 154, 76 S.Ct. 219, 222, 100 L.Ed. 149 (1956). Congress's designation of a penalty as civil is entitled to considerable deference. Such a designation will not be overborne unless the statute, considered on its face and without reference to the level of sanction imposed in the particular case, *see, e.g., Hudson v. United States*, —— U.S. at ——, 118 S.Ct. at 493; *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 169, 83 S.Ct. 554, 568, 9 L.Ed.2d 644 (1963), is clearly so punitive as to "render [it] criminal despite Congress' intent to the contrary," *United States v. Ursery*, 518 U.S. 267, ——, 116 S.Ct. 2135, 2148, 135 L.Ed.2d 549 (1996). " '[O]nly the clearest proof' " of its punitive character "will suffice to override legislative intent and transform" a sanction labeled "civil" into one that is criminal. *Hudson v. United States*, —— U.S. at ——, 118 S.Ct. at 493 (quoting *United States v. Ward*, 448 U.S. at 249, 100 S.Ct. at 2641).

■ The test to be used in determining whether a sanction is so punitive in nature as to transform what was intended as a civil remedy into a criminal penalty, and thus subject to the Double Jeopardy Clause's bar on multiple punishments, is the same inquiry that is used in determining whether other criminal proceeding protections apply. *See Hudson v. United States*, —— U.S. at ——, 118 S.Ct. at 493 (citing *United States v.*

*Ward,* 448 U.S. at 248, 100 S.Ct. at 2641 (addressing Fifth Amendment privilege against self-incrimination), and *Kennedy v. Mendoza–Martinez,* 372 U.S. at 167, 83 S.Ct. at 567 (addressing Fifth and Sixth Amendment rights to "criminal trial and all its incidents, including indictment, notice, confrontation, jury trial, assistance of counsel, and compulsory process for obtaining witnesses")). Thus, consideration of the seven factors set out in *Kennedy v. Mendoza–Martinez* is appropriate:

> (1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of *scienter*"; (4) "whether its operation will promote the traditional aims of punishment—retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned."

*Hudson v. United States,* —— U.S. at ——, 118 S.Ct. at 493 (quoting *Kennedy v. Mendoza–Martinez,* 372 U.S. at 168–69, 83 S.Ct. at 567–68).

■ This seven-factor list, though not exhaustive, provides "useful guideposts," *Hudson v. United States,* —— U.S. at ——, 118 S.Ct. at 493, and no single factor is dispositive, *see, e.g., id.* at ——, 118 S.Ct. at 494; *United States v. Ward,* 448 U.S. at 249, 100 S.Ct. at 2641. For example, the nature of the sanction cannot turn solely on whether the conduct at issue is also a crime, for it is well established that " 'Congress may impose both a criminal and a civil sanction in respect to the same act or omission,' " *United States v. Ursery,* 518 U.S. at ——, 116 S.Ct. at 2149 (quoting *Helvering v. Mitchell,* 303 U.S. at 399, 58 S.Ct. at 633). Thus, in *Ursery,* the Court ruled that the property forfeitures authorized in 18 U.S.C. § 981(a)(1)(A) and 21 U.S.C. § 881(a)(6) in order to "require disgorgement of the fruits of illegal conduct," 518 U.S. at ——, 116 S.Ct. at 2145, are properly classified as civil penalties, not as criminal punishment. *See id.* at ——, 116

S.Ct. at 2149 (the "goal of ensuring that persons do not profit from their illegal acts" is "nonpunitive"). Nor does the nature of the sanction turn solely on whether it has a goal of deterrence. Although deterrence is a traditional purpose of criminal punishment, that purpose "is insufficient to render a sanction criminal, as deterrence 'may serve civil as well as criminal goals.' " *Hudson v. United States,* —— U.S. at ——, 118 S.Ct. at 496 (quoting *United States v. Ursery,* 518 U.S. at ——, 116 S.Ct. at 2149). In the context of the banking industry, for example, government regulation in the form of monetary sanctions to deter fraud and self-dealing is designed to, *inter alia,* foster public confidence and promote the stability of the banking industry, and the *Hudson* Court noted that "[t]o hold that the mere presence of a deterrent purpose renders such sanctions 'criminal' for double jeopardy purposes would severely undermine the Government's ability to engage in effective regulation." —— U.S. at ——, 118 S.Ct. at 496. Thus, the Court concluded that administratively imposed monetary penalties for violation of banking regulations are properly classified as civil, not criminal, sanctions. *See id.*

Applying these principles to the sanctions imposed in the present case for violations of the securities laws, we note that the threshold matter of Congress's intent clearly favors classifying disgorgement and the fines at issue here as civil. The penalties provided for in the Remedies Act are expressly designated as civil: the subsections authorizing the fines are labeled "[m]oney penalties in civil actions," and within those provisions the fine is referred to as a "civil penalty." 15 U.S.C. §§ 77t(d), 78u(d)(3). Further, although disgorgement is not specifically provided for in the securities statutes, Congress has expressly endorsed that sanction, *see, e.g.,* H.R.Rep. No. 101–616, at 13 (1990), *reprinted in,* 1990 U.S.C.C.A.N. 1379, 1380 (Remedies Act authorizes courts "to order the payment of civil money penalties, *in addition to disgorgement*" (emphasis added)). The disgorgement remedy, which has long been upheld as within the general equity powers granted to the district court by § 22(a) of the Securities Act, 15 U.S.C. § 77v(a), and § 27 of the Exchange Act, 15 U.S.C. § 78aa, *see,*

*e.g., SEC v. Wang,* 944 F.2d 80, 85 (2d Cir. 1991); *SEC v. Manor Nursing Centers, Inc.,* 458 F.2d 1082, 1103 (2d Cir.1972), has not been considered a criminal sanction, *see, e.g., SEC v. Commonwealth Chemical Securities, Inc.,* 574 F.2d 90, 95–97 (2d Cir.1978) (no right to jury trial in disgorgement proceeding).

Turning to the seven factors that guide the second step of the double jeopardy inquiry, we conclude that neither disgorgement nor the monetary penalties set out in the Remedies Act are so punitive in purpose or effect as to override Congress's intent to provide for civil penalties. Although disgorgement and the Remedies Act fines apply to conduct that may also be prosecuted under a criminal statute, and they possess some characteristics common to criminal laws, such as requiring scienter and effecting deterrence, *see, e.g.,* H.R.Rep. No. 101–616, at 17, *reprinted in,* 1990 U.S.C.C.A.N. at 1384 (Remedies Act "would greatly increase deterrence"), neither disgorgement nor money penalties have historically been viewed as punishment. Rather, the "payment of fixed or variable sums of money" is a sanction that has long been recognized as civil. *Hudson v. United States,* —— U.S. at ——, 118 S.Ct. at 496 (internal quotation marks omitted). Moreover, such monetary sanctions do not involve an "affirmative disability or restraint," as that term is normally understood, *see id.;* certainly neither approaches the type of restraint involved in imprisonment.

In addition, these remedies have a clear rational purpose other than punishment. Disgorgement, like the forfeitures discussed in *Ursery,* is designed in part to ensure that the defendant not profit from his illegal acts, a goal that is nonpunitive. Further, the deterrence of securities fraud serves other important nonpunitive goals, such as encouraging investor confidence, increasing the efficiency of financial markets, and promoting the stability of the securities industry. All of these goals are advanced by the structure of the Remedies Act, which establishes three levels of fines; each tier sets maximum dollar amounts (distinguishing between individuals and corporations), with the proviso that a fine may exceed that tier's stated dollar maximum in order to match the defendant's unlawful gains. *See* 15 U.S.C. §§ 77t(d)(2), 78u(d)(3)(B). The first tier of fines applies to all securities law violations; the second provides higher maximum fines for violations that involved fraud; and the third provides the highest maximums for violations that involved fraud and "resulted in substantial losses or created a significant risk of substantial losses to other persons." *Id.* The linkage of the size of the potential fine to the level of the violator's scienter, the risk of loss to others, and the amount of the defendant's unlawful profits minimizes the possibility that a fine will be excessive in relation to Congress's nonpunitive goals.

We conclude that there is little indication, and certainly not the "clearest proof," required under *Hudson,* that disgorgement and the fines provided by the Remedies Act are criminal punishments. The Double Jeopardy Clause is therefore inapplicable.

### C. Other Contentions

■ Palmisano also makes double jeopardy challenges to provisions in judgments other than the one entered in the present case, *e.g.,* the forfeiture provision in the judgment entered in his criminal case (which this Court has already affirmed, *see United States v. Palmisano,* No. 96–1142, 1996 WL 680774, at **4 (2d Cir. Nov. 22, 1996) (unpublished disposition), *cert. denied,* —— U.S. ——, 118 S.Ct. 118, 139 L.Ed.2d 70 (1997)), and a bankruptcy court ruling that the disgorgement and penalty orders are not dischargeable in bankruptcy. Those other rulings are not properly before us and we decline to address them.

### CONCLUSION

We have considered all of Palmisano's contentions on this appeal insofar as they are properly before us and, except to the extent of the modification addressed in Part II.A. above, have found them to be without merit. The judgment of the district court is modified to provide that to the extent that Palmisano makes payment of restitution as ordered in the judgment entered in the criminal case, those payments shall offset

his disgorgement obligation in the present case; and as modified, the judgment is affirmed. A revised judgment reflecting the modification shall be entered in the district court.