State of NEW YORK, Plaintiff–Appellant–Cross–Appellee,

v.

JULIUS NASSO CONCRETE CORP.; Nasso/S & A, a Joint Venture; and Nicholas Auletta, Defendants–Appellees–Cross–Appellants,

Edward J. Halloran; S & A Concrete Co., Inc.; S & A Structures, Inc.; A & S Structures, Inc.; A & S Concrete Co.; and Alvin O. Chattin, Defendants–Appellees,

Cedar Park Concrete Corp.; Cedar Park Construction Corp.; Certified Concrete, Co.; Joseph Depaola; DIC Concrete Corp; DIC Industries, Inc.; Walter Goldstein; ILJ Enterprise, Inc.;

---

* The Honorable Richard W. Goldberg, of the United States Court of International Trade, sitting by designation.

1. We express no opinion on the views set forth in footnote 10 of the District Court's opinion.

Underhill Industries; Lizza Industries, Incorporated; Marine Pollution; Joseph Martinelli; North Berry Concrete Corp.; Underhill Construction Corp.; Transit–Mix Concrete Corporation; Frank Phelan; and Century–Maxim Construction Corp., Defendants.

Docket Nos. 98–9218, 98–9226, 98–9262.

United States Court of Appeals,
Second Circuit.

Argued: April 28, 1999
Decided: Jan. 25, 2000

84

Robert L. Hubbard, Ass't Atty. Gen. (Eliot Spitzer, Attorney General of the State of New York), New York, NY, for Plaintiff–Appellant–Cross–Appellee.

Richard L. Gold, Morelli & Gold, LLP, New York, NY, for Defendants–Appellees.

Before: WALKER and POOLER, Circuit Judges and MOTLEY, District Judge.*.

POOLER, Circuit Judge:

The State appeals from the judgment of the United States District Court for the Southern District of New York (Loretta A. Preska, *Judge*), which dismissed its complaint following a trial on damages because the court rejected the State's expert damages testimony as unreliable. The Nasso defendants and Nicholas Auletta appeal from the district court's grant of summary judgment to the State on the issue of antitrust liability based on the collateral estoppel effect of a prior criminal conviction establishing defendants' participation in a bid rigging conspiracy. For the reasons that follow, we affirm the district court's grant of summary judgment to the State on antitrust liability, vacate the ruling on damages and remand for a new trial on both causation and damages.

**BACKGROUND**

Both this lawsuit and a parallel criminal action ("*Salerno II*") stem from the

* The Honorable Constance Baker Motley, Senior United States District Judge of the South-

ern District of New York, sitting by designation.

State's investigation of an alleged big-rigging conspiracy in which the "Commission," the governing body of New York's five organized crime families, allocated all major concrete superstructure construction jobs in New York City to selected contractors, who were members of an entity known as the "Club." The State filed this antitrust lawsuit in 1985, alleging that between 1978 and 1985 Club members received all concrete construction jobs with a value of at least $2 million. The State also alleged that the dearth of competition due to the conspiracy drove construction prices up by as much as 15%. The State sought injunctive relief and damages against defendants related to overcharges in construction work for the New York Exposition and Convention Center (now known as the Jacob Javits Convention Center).

One year after the State filed this lawsuit, the United States brought a criminal action in district court, charging several defendants, including Nicholas Auletta, Edward J. Halloran, and others involved in the Convention Center project with racketeering in connection with bid rigging in the concrete superstructure industry in violation of RICO. *See United States v. Salerno,* 86 CR 245 ("*Salerno II*"). Familiarity with that case is assumed, but we review the pertinent facts here. *Salerno II* was the third such organized crime prosecution relating to the bid-rigging conspiracy.[1] The *Salerno II* indictment also charged Auletta and others with using their interests in S & A Concrete to facilitate the conspiracy. The evidence in *Salerno II* demonstrated that the criminal defendants participated in a scheme to allocate the major concrete work in New York City to members of the Club. The Commission chose which member of the Club would receive a particular job. In return for a contract, the selected contractor paid the Commission two percent of the contract price. In order to maintain the illusion of competition, however, other members of the Club who knew they were not slated to receive the job would submit inflated bids. Alternatively, other Club members would simply refrain from submitting a bid. As a means of enforcing the arrangement, the Commission controlled the supply of ready-mixed concrete and labor. At trial, the government introduced evidence of bid solicitations, bids and contracts for numerous construction projects, including the New York Convention Center.

After the verdict in *Salerno II,* which found the individual defendants involved in both this action and *Salerno II* guilty, the State moved for summary judgment in the instant antitrust action as to liability and the fact of damages. The State claimed that the guilty verdicts in *Salerno II* collaterally estopped defendants from relitigating those issues in the civil case. The district court (Preska, *J.*) found that, to prevail, New York would have to demonstrate that "(1) a bid rigging conspiracy occurred; (2) the bid rigging Conspiracy had an impact on the state; and (3) the state suffered damages by reason of that conspiracy." *State of New York v. Cedar Park Concrete Corp.,* 1997 WL 306909, at *7 (S.D.N.Y.1997). Judge Preska found that *Salerno II* collaterally estopped defendants from contesting their involvement in the bid rigging conspiracy and the conspiracy's impact on the State. *See id.* at *7–9. However, the court denied summary judgment as to "the fact of damages" and left that determination for trial. *See id.* at *9. In examining the effect of *Salerno II* on this case, Judge Preska noted that the jury instructions, evidence at trial and jury verdict established that the criminal defendants participated in a scheme to

---

1. *See United States v. Persico,* 620 F.Supp. 836 (S.D.N.Y.), *aff'd,* 774 F.2d 30 (2d Cir.1985); *see United States v. Persico,* 646 F.Supp. 752 (S.D.N.Y.1986), *aff'd in part, rev'd in part,* 832 F.2d 705 (2d Cir.1987), *cert denied,* 486 U.S. 1022, 108 S.Ct. 1995, 100 L.Ed.2d 227 (1988); *see also United States v. Salerno,* 868 F.2d 524 (2d Cir.1989), *cert. denied,* 491 U.S. 907, 493 U.S. 811, 109 S.Ct. 3192, 110 S.Ct. 56, 105 L.Ed.2d 700, 107 L.Ed.2d 24 (1989) ("*Salerno I* ").

allocate concrete superstructure construction jobs and that a cartel known as the "Club" was formed. Furthermore, the district court found that the testimony of Louis Corbetta confirmed that the scheme worked in part because the conspirators controlled the supply of concrete and labor. *See Cedar Park,* 1997 WL 306909, at *3–4. Judge Preska concluded that the jury's verdict that the criminal defendants in *Salerno II* were guilty of a RICO violation had preclusive effect as to the individual defendants who were named in the instant civil case because the jury made a specific finding that bid rigging had occurred in connection with numerous construction jobs, including the New York Convention Center. *See id.* at *8. Applying the principles of *respondeat superior,* the court also found that the verdicts against the individual defendants also barred the corporations they controlled. *See id.* at *10. In a special verdict on forfeiture, the jury found that the conspirators used certain entities—including S & A Concrete, S & A Structures, Inc., A & S Structures, Inc., A & S Concrete Inc., and Nasso—S & A, a joint venture—as instruments of the conspiracy.

After the district court granted summary judgment as to defendants' participation in the bid rigging scheme but denied summary judgment on the "fact of damages," most of the defendants reached a settlement with the State, leaving only the State's claims against the Nasso defendants to be tried. After a bench trial, Judge Preska rejected the States's expert testimony on damages because it was unreliable and therefore concluded as a matter of law that the State failed to prove damages proximately caused by the Nasso defendants. The State appeals, and the Nasso defendants and Nicholas Auletta cross-appeal from the district court's summary judgment order.

## DISCUSSION

### I. Collateral Estoppel

■ We first consider whether the district court properly granted partial sum-

mary judgment to the State on antitrust liability based on collateral estoppel. The Nasso defendants urge us to vacate the district court's collateral estoppel ruling because Nicholas Auletta's conviction in *Salerno II* does not prove that the Nasso defendants were part of the Club or that the State suffered damages as a result of its activities. The State argues that Judge Preska properly found that Nicholas Auletta (a principal in S & A) and the Nasso defendants are collaterally estopped from challenging liability based on their criminal RICO convictions in *Salerno II.*

■ We review *de novo* the district court's grant of summary judgment based on collateral estoppel, construing the record and drawing all inferences in favor of the non-moving party. *See Hemphill v. Schott,* 141 F.3d 412, 415 (2d Cir.1998). To prevail, the moving party must show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "[A] criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case." *United States v. Podell,* 572 F.2d 31, 35 (2d Cir.1978). In order for collateral estoppel to apply the court must determine that "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *NLRB v. Thalbo Corp.,* 171 F.3d 102, 109 (2d Cir. 1999).

We affirm the district court's ruling as to collateral estoppel and find that the issue of causation was properly left open for determination at trial. Judge Preska

carefully evaluated the jury instructions, verdict, and findings of the jury in *Salerno II* and, based on her review, determined that Auletta and the Nasso defendants clearly participated in the bid-rigging conspiracy. For example, in *Salerno II*, although the charges involved mail fraud as predicate acts under RICO, the verdicts involved necessary findings regarding the defendants' participation in bid-rigging activities. Judge Lowe instructed the jury to find the defendants guilty only if "that defendant had actual knowledge of the existence of a plan to rig the bids" and "actively participated in the scheme with the specific intent of furthering that particular scheme by some act or acts on his part." In addition, as the Special Jury Verdict Form revealed, the jury specifically found Auletta guilty of participating in the bid-rigging conspiracy.[2] Although Julius Nasso Concrete Corporation was not among those convicted in *Salerno II*, we agree with the district court that there was sufficient privity between that entity and Auletta due to the Nasso/S & A joint venture to bind the corporation and the joint venture.

■ Because we are not convinced that Judge Lowe's findings at the sentencing of Edward Halloran collaterally estopped the defendants in this case from contesting the issue of causation, we also affirm Judge Preska's decision not to grant summary judgment on that issue. In *SEC v. Monarch Funding*, 192 F.3d 295 (2d Cir.1999), we declined to adopt a blanket prohibition against the use of sentencing findings for purposes of offensive collateral estoppel, but held that "precluding relitigation on the basis of such findings should be presumed improper" and "should be applied only in those circumstances where it is clearly fair and efficient to do so." *Id.* at 306. For the reasons stated in the district court's opinion and in light of *Monarch Funding*, we conclude that it would not be proper to preclude litigation of the causation issue. Therefore, the district court correctly found that the State did not have to prove that defendants participated in the bid-rigging scheme, but did bear the burden of proving that this activity caused the State damages.

■ While we affirm Judge Preska's decision to let the issue of causation proceed to trial, we vacate her subsequent finding of no causation. For reasons that apply as well to the damages conclusion, we think that the district court imposed too high a burden on the State in proving causation. In an antitrust case such as this, the district court has discretion to conclude that the finding of antitrust activity and purchasing of services from the convicted defendants without more *may* prove causation. In the classic tort analysis of liability and causation, the boundaries may be more clearly defined. But the very nature of the antitrust liability found here, where every one of the purveyors of concrete superstructures is a member of the conspiracy, makes the separate finding of causation less of a discrete analytical exercise, because the State cannot provide comparative data of an "unrigged" market place.

## II. Antitrust Damages

■ We turn now to consider whether the district court properly rejected the State's expert testimony on damages and dismissed the complaint. We review *de novo* the court's decision on damages. *See Hirschfeld v. Spanakos*, 104 F.3d 16, 19 (2d Cir.1997) (conclusions of law or mixed questions of law and fact subject to *de novo* review). The State argues that the district court erred in rejecting the expert testimony of James T. McClave as unrelia-

---

**2.** This court reversed Auletta's conviction, *see United States v. Salerno*, 937 F.2d 797 (2d Cir.1991), but the Supreme Court reinstated it, *see United States v. Salerno*, 505 U.S. 317, 112 S.Ct. 2503, 120 L.Ed.2d 255 (1992). While the case was remanded to this court for further proceedings, *see United States v. Salerno*, 974 F.2d 231 (2d Cir.1992), *vacated sub nom, United States v. DiNapoli*, 8 F.3d 909 (2d Cir.1993) (rehearing en banc), Auletta ultimately withdrew his appeal, rendering his conviction final.

ble. The State contends that the district court applied an unreasonably harsh standard of proof and erred in rejecting its expert testimony because the detrimental effect of the defendant's wrongful conduct on the plaintiff's ability to prove damages can lessen the plaintiff's burden. *See New York v. Hendrickson Bros.*, 840 F.2d 1065, 1077 (2d Cir.1988).

The Nasso defendants respond that the dismissal should be affirmed because the State failed to sustain its burden of proving damages proximately caused by the alleged bid rigging. Contrary to the State's assertion, Nasso argues that the plaintiff's burden to prove antitrust damages was not lessened in any way. According to the Nasso defendants, the cases cited by the State are inapposite because here the plaintiff does not "stand in the shoes" of a competitor with respect to the members of the Club or to the Nasso defendants. The Nasso defendants argue that while a customer of an antitrust defendant may be afforded some latitude in proving damages where there is a dearth of market information due to the collusion at issue, *see Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 264, 66 S.Ct. 574, 90 L.Ed. 652 (1946), in this case the State cannot avail itself of the diminished burden of proof because it failed to meet the threshold requirement of showing that its damages are not attributable to other causes.

■ We vacate the decision of the district court and remand for a new trial. The confusion over precisely what the State's burden was, which issues were left open for trial, and what standard was applied to the damages evidence necessitates a new trial. The State bears the burden of proving causation as well as damages, because collateral estoppel does not apply to either issue. "[C]ourts have always distinguished between proof of causation of damages and proof of the amount of damages ... requiring plaintiffs to prove in a reasonable manner the link between the injury suffered and the illegal practices of the defendant." *MCI Communications Corp. v. American Tel. & Tel. Co.*, 708 F.2d 1081, 1161 (7th Cir.1983). To the extent this distinction was not evident in the first trial, we reiterate that the State is obligated to prove both issues at trial in order to prevail.

■ However, if causation is established, the court must "observe the practical limits of the burden of proof which may be demanded of a treble-damage plaintiff who seeks recovery for injuries." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969). We recognize that the State's burden of proving antitrust damages is not as rigorous as in other types of cases. Moreover, contrary to the Nasso defendants' argument, the fact that the State was a customer, instead of a competitor does not warrant a heightened burden of proof. "[D]amage issues in [antitrust] cases are rarely susceptible of the kind of concrete, detailed proof of injury which is available in other contexts." *Id.* "[I]n the absence of more precise proof, the jury could conclude as a matter of just and reasonable inference from the proof of defendants' wrongful acts and their tendency to injure plaintiffs' business and from [injury] not shown to be attributable to other causes, that defendants' wrongful acts had caused damage to the plaintiffs." *Bigelow*, 327 U.S. at 264, 66 S.Ct. 574. One of the limitations involved in proving antitrust damages is establishing what the market price of the commodity or service would have been in an unmanipulated market. "Where, however, there is a dearth of market information unaffected by the collusive action of the defendants, the plaintiff's burden of proving damages, is, to an extent, lightened." *New York v. Hendrickson*, 840 F.2d at 1077. As the antitrust violation here was a bid-rigging conspiracy, the measure of damages would ordinarily be the difference between the price actually paid by the State on the contracts and the price it would have paid absent the conspiracy. *See id.* On re-

mand, the State need only provide the court with some relevant data from which the district court can make a reasonable estimated calculation of the harm suffered. In this way, the finder of fact can make "a just and reasonable inference" of damages based on the proof available; to do otherwise " 'would be a perversion of fundamental principles of justice [and would] deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts.' " *Id.*, quoting *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563, 51 S.Ct. 248, 75 L.Ed. 544 (1931).

## CONCLUSION

For the foregoing reasons, we affirm in part and vacate in part the judgment of the district court and remand for a new trial on causation and damages.