UNITED STATES of America,
Plaintiff,

v.

Salvin R. LAMANNA, Defendant.

No. 97–CV–6563L.

United States District Court,
W.D. New York.

Sept. 26, 2000.

John R. Parrinello, Rochester, NY, for Salvin R. Lamanna, defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

## INTRODUCTION

The United States ("Government") commenced this action against Salvin R. LaManna ("LaManna"), alleging violations of the False Claims Act ("FCA"), 31 U.S.C. §§ 3729, et seq. The Government now moves for partial summary judgment. For the following reasons, the Government's motion is granted in part and denied in part.

## FACTS

Defendant was formerly employed by the United States Postal Service ("USPS"). In 1971, plaintiff was injured, and in 1977, he began receiving compensation benefits pursuant to the Federal Employees' Compensation Act ("FECA"). On June 27, 1996, defendant submitted a form ("June 1996 form") to the United States Department of Labor in connection with these benefits on which defendant indicated that he had neither been self-employed nor involved in a business enterprise during the preceding fifteen months.

At some point, it was discovered that defendant was, in fact, self-employed and engaged in the operation of a sporting goods business with his wife. According to the Government, defendant's involvement with this business was documented on July 2, 1990, when plaintiff completed a questionnaire prepared by the USPS but disguised as a marketing survey.

Defendant was charged in a one-count felony information with making a false, fictitious, or fraudulent statement in order to obtain federal employees' compensation in violation of 18 U.S.C. § 1920.[1] Defendant pleaded guilty and was sentenced on April 25, 1997. This single-count information was based on the false statement in the June 1996 form. The sentencing judge imposed a $10,000 fine and ordered defendant to pay restitution in the amount of $119,432.54. The total amount of loss to the Government was determined to be $404,073.

The Government then, through this action, sought to recover civil damages and penalties pursuant to the FCA. In its complaint, the Government alleges that forms completed by plaintiff between April 22, 1986 and November 1, 1996 and the cashing of disability checks during that period constitute separate violations of the FCA by the plaintiff. *See* Complaint, ¶¶ 40–42. Pending before this Court is the Government's motion for partial summary judgment for the false claims and statements allegedly related to plaintiff's April 25, 1997 conviction, specifically, the June 1996 form and the disability checks cashed by plaintiff during the fifteen months *prior* to June 1996. *See* Fed.R.Civ.P. 56(c).

---

1. 18 U.S.C. § 1920 provides:

Whoever knowingly and willfully falsifies, conceals, or covers up a material fact, or makes a false, fictitious, or fraudulent statement or representation, or makes or uses a false statement or report knowing the same to contain any false, fictitious, or fraudulent statement or entry in connection with the application for or receipt of compensation or other benefit or payment under subchapter I or III of chapter 81 of title 5, shall be guilty of perjury, and on conviction thereof shall be punished by a fine under this title, or by imprisonment for not more than 5 years, or both; but if the amount of the benefits falsely obtained does not exceed $1,000, such person shall be punished by a fine under this title, or by imprisonment for not more than 1 year, or both.

## DISCUSSION

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on a motion for summary judgment, the court "must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir.2000) (quoting *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 572 (2d Cir.1993)).

The Government argues that the doctrine of collateral estoppel precludes defendant from denying liability for the false statement made in the June 1996 form. The Government seeks to establish liability and to impose penalties for the false claim contained in the June 1996 form and also for each of the fifteen benefits checks received and cashed by the defendant during the fifteen months preceding the submission of the June 1996 form.

■ "[A] criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case." *New York v. Julius Nasso Concrete Corp.*, 202 F.3d 82, 86 (2d Cir.2000) (quoting *United States v. Podell*, 572 F.2d 31, 35 (2d Cir.1978)). With respect to claims arising under the FCA, this principle is codified at 31 U.S.C. § 3731(d):

[A] final judgment rendered in favor of the United States in any criminal proceeding charging fraud or false statements, whether upon a verdict after trial or upon a plea of guilty or nolo conten-

dere, shall estop the defendant from denying the essential elements of the offense in any action which involves the same transaction as in the criminal proceeding and which is brought under subsection (a) or (b) of section 3730.

■ Defendant argues that although the false statement contained in the June 1996 form could serve as a basis for his conviction pursuant to 18 U.S.C. § 1920, the statement cannot support a claim under the FCA. This argument is unavailing. The FCA subjects any person to liability who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. § 3729(a)(2). A claim is defined as "any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded...." 31 U.S.C. § 3729(c). By virtue of his guilty plea, defendant admitted that he made a false statement "in connection with the application for receipt of compensation or other benefit or payment under subchapter I or III of chapter 81 of title 5...." 18 U.S.C. § 1920. Moreover, the June 1996 form specifically stated that:

"[t]he information requested is required in connection with your receipt of benefits under the Federal Employees' Compensation Act, 5 U.S.C. § 8101 et seq. This information will be used to determine your qualification for continued benefits, or to determine whether an adjustment in benefits may be warranted."

Plaintiff's Memorandum in Support, Ex. B, p. 1.

Thus, defendant is subject to liability under the FCA as a result of his fraudulent statements on the 1996 form. In addition, as a result of his guilty plea and subsequent conviction, defendant is now

estopped from denying liability for the false claim under the FCA.

The Government also contends that each of the disability checks cashed by plaintiff during the fifteen months prior to the submission of the June 1996 form constitutes a "claim" within the meaning of the FCA. The 1996 form required disclosures concerning defendant's earnings and employment during the preceding fifteen months. Defendant admitted by virtue of his guilty plea that the 1996 form contained fraudulent statements. According to the Government, these statements were used to "get a false or fraudulent claims ... approved by the Government," that is, "the fifteen monthly benefits checks defendant presented during the fifteen month period covered by the false statement." Plaintiff's Memorandum of Support, p. 10. The Government argues that because the 1996 form states that the information is "required in connection with your receipt of benefits under the Federal Employees' Compensation Act" and because the form indicates that the statement "is to cover the fifteen months prior to the date of your completion and signature," this claim "retrospectively authorized the receipt of benefits checks." [2] Plaintiff's Reply Brief, p. 2.

The important question to be determined here is whether defendant's guilty plea also estops him from denying liability for the fifteen disability checks that defendant cashed during the time period at issue.[3] Pursuant to the collateral estoppel provision of the FCA, defendant is estopped from "denying the essential elements of the offense in any action which involves the *same transaction* as in the criminal proceeding." 31 U.S.C. § 3731(d) (emphasis added). Likewise, the traditional rubric for evaluating the application of

offensive collateral estoppel requires a court to first determine if "the issues in both proceedings [are] identical." *SEC v. Monarch Funding*, 192 F.3d 295, 304 (2d Cir.1999) (evaluating preclusive effect of criminal sentencing findings in later civil suit for violation of federal securities laws).

■ The Government has not provided this Court with sufficient information to determine whether or not the checks can be considered part of the same transaction, and therefore, summary judgment must be denied as to those checks. In support of its motion, the Government has not provided the Court with defendant's plea colloquy, and the sentencing transcript provided in support of the Government's motion provides only a brief excerpt of the colloquy, as quoted by the sentencing judge:

> "The Government's evidence would show that on or about May 8th, 1996 the defendant filed a form with the ... Department of Labor Employment Standards Administration. In that statement the question was were you self-employed or involved in any business enterprise in the past fifteen months. The defendant stated no. He signed that document May 8th. On June 27th he reaffirmed that statement. The defendant knew that at the time he was, in fact, employed or involved in a business enterprise for the last fifteen months; specifically, Sal's Sporting Goods among other activities."

Plaintiff's Memorandum in Support, Ex. C, p. 5.

The defendant pleaded guilty to "knowingly" making a false statement "in connection with the application for or receipt of compensation" under the FECA. *See* 18 U.S.C. § 1920. Thus, plaintiff satisfied the scienter requirement of 31 U.S.C.

---

**2.** The Government's characterization of the language on the June 1996 form neglects to reconcile language which indicates that the information provided "will be used to determine your qualification for *continued benefits,* or to determine whether an adjustment in benefits may be warranted," suggesting that defendant's responses would be used to deter-

mine future eligibility. Plaintiff's Memorandum in Support, Ex. B, p. 1. (emphasis added).

**3.** Defendant argues that these checks cannot be considered claims under the FCA. As the Court's discussion, *infra,* reveals, the Court need not make this determination.

§ 3729(a)(2) with respect to the FCA claim based on the June 1996 form. However, by admitting this false statement, the record before the Court does not show that defendant was also admitting that he "knowingly" presented for payment disability checks to which he was not entitled. 31 U.S.C. § 3729(a)(2); *see United States v. Mickman*, 1993 WL 541683, at *3 (E.D.Pa. Dec.22, 1993) ("[P]reclusive effect of section 3731(d) of the False Claims Act with respect to guilty pleas extends only so far as the conduct described in the count or counts to which the guilty plea applies."). In fact, at sentencing, defendant's attorney continued to suggest that defendant was actually entitled to receive disability benefits. *See* Plaintiff's Memorandum in Support, Ex. C, pp. 6, 8–9.

■ Furthermore, although the sentencing court in determining the appropriate amount of restitution to be paid by defendant suggested that defendant had been improperly obtaining disability benefits, this determination is not sufficient to estop plaintiff from denying liability. The Second Circuit has held that the use of sentencing findings for purposes of offensive collateral estoppel in a civil proceeding " 'should be presumed improper' and 'should be applied only in those circumstances where it is clearly fair and efficient to do so.' " *Julius Nasso Concrete Corp.*, 202 F.3d at 87 (quoting *Monarch Funding*, 192 F.3d at 306). Such an application would not be proper here.[4]

For the reasons discussed above, the Government has not shown that defendant is collaterally estopped from denying liability under the FCA with respect to the fifteen benefits checks at issue, and there-

fore, summary judgment on this record is denied.

Defendant argues that the imposition of additional penalties violates the Double Jeopardy Clause of the Fifth Amendment. In support of his argument, defendant urges the Court to adopt the analysis followed by the Supreme Court in *United States v. Halper.* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) (Civil FCA action found violative of Double Jeopardy Clause where defendant was already criminally punished for the same conduct.). As Defendant acknowledges, the Supreme Court in *Hudson v. United States* abrogated the holding in *Halper,* ruling that "*Halper's* deviation from longstanding double jeopardy principles was ill considered." 522 U.S. 93, 101, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997). The *Hudson* Court returned to its pre-*Halper* methodology, and held that "[w]hether the particular punishment is criminal or civil is, at least initially, a matter of statutory construction." 522 U.S. at 99, 118 S.Ct. 488.

The Court's first task is to determine whether the legislature intended the penalty to be civil or criminal in nature. Where, as here, the legislature expressed a clear intent to form civil penalties (*see* 31 U.S.C. § 3729(a)), the Court must inquire " 'further whether the statutory scheme was so punitive either in purpose or effect' . . . as to 'transform what was clearly intended as a civil remedy into a criminal penalty.' " *Id.* (internal quotations and alterations omitted). The Supreme Court provided seven factors to be employed as "useful guideposts" in making this determination:

(1) "[w]hether the sanction involves an affirmative disability or restraint"; (2)

---

4. The FECA at 5 U.S.C. § 8106(b) punishes a recipient of partial disability benefits who "knowingly omits or understates any part of his earnings" by holding that such a recipient "forfeits his right to compensation with respect to any period for which the affidavit or report was required." It is arguable that because of his false statement on the June 1996 form, defendant could have been required to disgorge benefits received during the fifteen month period described in the

form. However, even if this section was held applicable to defendant's actions here, such a finding would not be tantamount to a finding that defendant, when he cashed the fifteen disability checks during the time period at issue, "knowingly [made], use[d], or cause[d] to be used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." *See* 31 U.S.C. § 3729(a)(2).

"whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of scienter"; (4) "whether its operation will promote the traditional aims of punishment—retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned."

522 U.S. at 99–100, 118 S.Ct. 488 (quoting *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963)); *see also SEC v. Palmisano*, 135 F.3d 860, 865 (2d Cir.1998).

In support of his position, defendant provides no authority other than his references to *Halper* and *Hudson*. Defendant simply argues that "the critical distinguishing feature between *Halper* and *Hudson* is which came first, the civil or the criminal proceedings." Defendant's Memorandum of Law, p. 12. He has not argued that this FCA action, when subjected to the *Hudson* analysis, violates the Double Jeopardy Clause.

Defendant's contention is foreclosed by the Second Circuit's holding in *SEC v. Palmisano*, 135 F.3d 860. In *Palmisano*, the defendant pleaded guilty to several criminal counts, which included securities fraud. The SEC then brought a civil complaint alleging the same conduct and seeking disgorgement of unlawful gains and a civil penalty. The defendant, relying on *Halper*, argued that the latter civil action was violative of his Fifth Amendment rights. The Second Circuit applied the *Hudson* analysis and rejected the defendant's argument.

First, the Second Circuit determined that the penalties at issue were intended to be civil in nature. The court then turned to the seven factor inquiry articulated in *Hudson*. The court addressed both the

disgorgement penalty and fines, finding that neither penalty was "so punitive in purpose or effect as to override Congress's intent to provide for civil penalties." 135 F.3d at 866.

■ The statutory scheme at issue here is similar to the one addressed by the Second Circuit in *Palmisano*. As with the civil damages and fines imposed pursuant to the FCA, "disgorgement and the Remedies Act fines apply to conduct that may also be prosecuted under a criminal statute, and they possess some characteristics common to criminal laws, such as requiring scienter and effecting deterrence." *Id.* However, "neither disgorgement nor money penalties have historically been viewed as punishment. Rather, the 'payment of fixed or variable sums of money' is a sanction that has long been recognized as civil." *Id.* (citing *Hudson*, 522 U.S. at 104, 118 S.Ct. 488); *see also United States v. Lippert*, 148 F.3d 974, 976–77 (8th Cir. 1998) (interpreting provisions of the Anti–Kickback Act that provide for civil damages and fines and holding such provisions not violative of Fifth Amendment). Therefore, at this preliminary stage of the litigation, the facts before the Court indicate that the institution of this civil action does not violate defendant's Fifth Amendment rights.[5]

Defendant also argues that the Court should force the Government to honor its promise to dismiss this action. According to defendant, the Government represented that it would not proceed with the civil claims if it was shown that defendant did not have significant assets. Defendant argues that he has made this showing, therefore, the Government should be forced to honor its "commitment." Defendant's Memorandum, p. 14. Defendant does not appear to argue that the Government breached any form of settlement agreement, and the bulk of authority cited by defendant involves a criminal defendant's rights during plea negotiations.

---

5. The seventh prong of the *Hudson* test concerns whether the penalty "appears excessive in relation to the alternative purpose as-

signed." At this point in the litigation, the Court is unable to make this determination.

■ Defendant's argument here is without merit. Defendant has not defined the parties' understanding regarding the term "significant assets." Moreover, contrary to defendant's suggestion, copies of correspondence between defendant and the Government provided in support of defendant's claim clearly demonstrate the Government's continuing concern that the defendant's assets were greater than reported.

Should the Court grant its motion for partial summary judgment, the Government has requested that the Court assess civil penalties in the amount of $80,000 to $160,000 and treble damages in the amount of $74,861.13. As discussed above, the Court has granted the Government's motion as to only one claim involving a false statement contained in the June 1996 form. The Government's requested treble damage award was premised on a determination that the fifteen benefits checks were, in fact, fifteen separate claims under the FCA. Moreover, the Court is faced at this point with one proven violation of the FCA, and a complaint that, on its face, could possibly encompass an additional 150 claims. Therefore, the Court will not assess specific damages and fines at this time pending further proceedings.[6]

## CONCLUSION

For the all the above reasons, the Government's motion for partial summary judgment (Dkt.# 12) is denied in part and granted in part. Summary judgment is granted in favor of the Government as to liability only with respect to the June 27, 1996 form described at paragraph 31 of the Complaint.

IT IS SO ORDERED.

---

6. Because the amount of damages for which defendant may be liable has not yet been determined by the Court, it would be premature to address defendant's argument that the imposition of fines violates the Excessive Fines Clause of the Eight Amendment.