UNITED STATES of America,
Plaintiff–Appellee,

v.

Macklin BROWN, Defendant–
Appellant.

No. 01–2319.

United States Court of Appeals,
Seventh Circuit.

Submitted June 20, 2002.

Decided June 20, 2002.

Before WOOD, Jr., COFFEY, and ROVNER, Circuit Judges.

## ORDER

A jury found Macklin Brown guilty of conspiracy to distribute one kilogram or more of heroin, 21 U.S.C. §§ 841(a)(1) and 846, and the district court sentenced him to 360 months' imprisonment, five years' supervised release, and a $2,000 fine. Brown appeals, but his appointed counsel have filed a motion to withdraw under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), because they believe all potential appellate issues are frivolous. Pursuant to Circuit Rule 51(b) Brown has supplemented the issues identified in counsel's facially adequate brief but has not identified any non-frivolous arguments. As we agree that the issues identified by counsel are frivolous, we grant counsel's motion and dismiss the appeal.[1]

---

1. Brown was tried and convicted along with his co-conspirator Van Jackson, whose coun-     sel has also sought to withdraw pursuant to

■ Counsel initially consider whether Brown might argue that the district court erred in refusing to suppress evidence obtained through a wiretap on a co-conspirator's cell phone, which heroin users called to get their heroin delivered to the various Indianapolis street corners where Brown and his fellow conspirators dealt. The first potential theory is that the government failed to establish necessity in its wiretap application. *See* 18 U.S.C. § 2518. But as counsel note, this case is indistinguishable from *United States v. Adams,* 125 F.3d 586 (7th Cir.1997). As in *Adams,* the application included an exhaustive recital of the government's investigative failures thus far, including its inability to discover the source of Brown's heroin. In addition, the application depicted the organization's insular and violent character, which made it both dangerous and difficult for a government agent to successfully infiltrate. Finally, the FBI believed that agents would stand out in the neighborhood in which the organization operated, thus making physical surveillance of limited usefulness, if not harmful. Considering the detail of the government's application in light of *Adams,* we agree with counsel that arguing the wiretap was not reasonably necessary would be frivolous.

■ Counsel next weigh whether Brown could pursue the suppression theory that the government violated the wiretap statute by failing to obtain a new intercept authorization immediately after the co-conspirator switched his cellular phone number to a new cellular telephone. The original authorization specified not only the phone number, but also the electronic serial number–a unique number hardwired into every cell phone–of the original phone. Brown would have to argue that continuing to monitor the phone number after the

co-conspirator had it reassigned to the new phone was unlawful because the initial authorization no longer described with particularity the tapped communication facility: the co-conspirator's new cell phone. *See* 18 U.S.C. § 2518(3)(d).

This theory is frivolous unless the district court would have been precluded from authorizing the wiretap if it had known the co-conspirator was going to switch phones. Only if the court would have been so precluded by the dictates of § 2518 is suppression required. *See United States v. Donovan,* 429 U.S. 413, 433–35, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977). Counsel directs us to *United States v. Duran,* 189 F.3d 1071 (9th Cir.1999), which is the only circuit precedent on this issue. Confronted with a situation strikingly like the one in this case, the *Duran* court followed *Donovan* in reasoning that "in no meaningful sense can it be said that the presence of that information as to additional [phones] would have precluded judicial authorization of the intercept." *Id.* at 1085–86 (citation omitted). Furthermore, in *Duran* it was clear from the intercept authorization, which allowed continued monitoring of any changed telephone numbers traceable to the original target number, that the authorizing judge had intended to permit surveillance of any communication traceable to the number in the original order. The court therefore refused to suppress evidence gathered after a suspect had changed his cell phone but not his phone number, even though the authorization was precise as to both phone number and ESN.

Here, as in *Duran,* the court would have acted well within its authority under § 2518 had it included language authorizing continued eavesdropping on calls placed to and from the co-conspirator's

---

*Anders.* Brown's and Jackson's cases share many of the same issues, and their counsel's briefs cite to each other. The analysis contained in this order is therefore similar in many respects to that in the order issued in Jackson's case.

phone number regardless of changes in the telephone to which it was assigned. And the original authorization contained language–almost exactly the same language as in *Duran* –evidencing the judge's intent to authorize continued interception of any communication traceable to the original target number. In fact, later intercept orders did include such authority. The novelty of the question in this circuit does not preclude us from determining that an appeal on this ground would be frivolous, *see United States v. Lopez–Flores,* 275 F.3d 661, 662 (7th Cir.2001), and considering the persuasive force of *Duran* we agree with counsel that pursuing this suppression theory would indeed be so.

■ Before moving beyond the wiretap, counsel consider a final potential suppression theory: that suppression was required because the government did not immediately seal the tapes, as is mandated upon expiration of the wiretap authority. *See* 18 U.S.C. § 2518(8). That authority ends on the date specified in the intercept order or when surveillance has achieved its objectives, whichever is sooner. *See* 18 U.S.C. § 2518(5). The wiretap's objectives in this case, as described in the authorizing order, included revealing "fully" the identities of Brown's "confederates." Although it had yet to identify an important confederate–Brown's heroin source–the government's last intercept occurred on April 19, 1999, eighteen days before the stated May 7 expiration date. The government sealed the tapes on April 28, 1999. At a suppression hearing, the agent in charge of the conspiracy investigation explained that he ceased monitoring the phone because use by targets had declined, though he did not immediately seal the tapes after April 19 because the objectives of the investigation had not been achieved and he still contemplated periodically checking the phone to determine if the conspirators had resumed using it. Counsel conclude that these facts show that the government indeed sealed

the tapes before it even needed to, and we agree that arguing otherwise would be frivolous. *See United States v. Wong,* 40 F.3d 1347, 1375–76 (2d Cir.1994) (tapes need not be sealed immediately after last intercept if surveillance objectives of the wiretap have not been accomplished and government contemplates further monitoring to complete the investigation); *United States v. Badalamenti,* 794 F.2d 821, 824–25 (2d Cir.1986) (same).

■ Turning to other potential arguments, counsel consider whether Brown might argue that the district court erred in dismissing juror Whitfield, who approached the court and counsel after voir dire and revealed that his son was in prison on charges he believed were the product of racism. The court thought the revelation evidence of possible bias and the belated disclosure dishonest in light of pointed voir dire questions regarding family members' involvement with police. The court therefore exercised its discretion to dismiss juror Whitfield for cause, *see United States v. McAnderson,* 914 F.2d 934, 944 (7th Cir.1990), and any contention that the court abused that discretion by doing so would be frivolous because Brown cannot show that the dismissal resulted in an impartial jury or substantially impaired his use of peremptory challenges, *see United States v. Martinez–Salazar,* 528 U.S. 304, 316–17, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000). Brown objected that he used his peremptory challenges to seat Whitfield, but he was entitled only to an impartial jury drawn from a fair cross-section of the community, not to have any particular juror hear his case. *Id.; United States v. Phillips,* 239 F.3d 829, 842 (7th Cir.2001).

■ Counsel next weigh whether Brown could seriously argue that there was insufficient evidence for a rational jury to convict him of conspiracy. As counsel note, we would review such a claim deferentially, asking whether any ra-

tional trier of fact could have convicted on the basis of the government's evidence. *See United States v. Draves,* 103 F.3d 1328, 1332 (7th Cir.1997). The jury heard voluminous evidence implicating Brown in a long-running conspiracy to distribute heroin in Indianapolis. That evidence included many recorded conversations over the co-conspirator's tapped phone in which the conspirators discuss drug dealing, testimony from co-conspirators that Brown ran the conspiracy and received the profits while the leader was away and that every day for ten months conspirators sold between two and ten heroin "balls" (one "ball" equaled thirty packages of heroin, each package weighing about .15 grams), and testimony from undercover police officers who made controlled buys from members of the conspiracy. As counsel conclude, it would be frivolous to argue that the jury's verdict was unsupported. *See generally United States v. Runnels,* 93 F.3d 390, 394 (7th Cir.1996) (noting that sufficiency-of-the-evidence challenges are almost impossible to win).

■ Counsel also contemplate whether to argue that the district court erred in refusing a jury instruction requested by Brown. There was some suggestion at trial that the government had investigated more than one heroin conspiracy, and then lumped them all together for purposes of the indictment. The defense wanted an instruction that the jury must acquit if the government did not prove the exact conspiracy, and only the exact conspiracy, charged in the indictment. But as counsel note, the proposed instruction incorrectly stated the law and therefore was properly rejected. *See United States v. Wilson,* 135 F.3d 864–65 (7th Cir.1998). The multiple-conspiracy instruction actually given was derived almost word-for-word from the one we approved in *Wilson.* As counsel conclude, challenging the rejection of Brown's jury instructions or the one actually given would therefore be frivolous.

Counsel next ponder whether Brown could seriously argue that the district court abused its discretion by admitting his co-conspirator's out-of-court statements into evidence at trial pursuant to Federal Rule of Evidence 801(d)(2)(E). In order for the government to use the co-conspirators' statements against Brown, it had to prove "by a preponderance of the evidence ... that (1) a conspiracy existed, (2) the defendant and the declarant were members of the conspiracy, and (3) the statement(s) sought to be admitted were made during and in furtherance of the conspiracy." *United States v. Irorere,* 228 F.3d 816, 824 n. 1 (7th Cir.2000) (internal quotations omitted). As noted above, the government conclusively established the existence of a conspiracy and Brown's membership in it. The record also reveals that the admitted co-conspirator statements–which concerned heroin prices and sales and conspirators' meetings–were all made during and in furtherance of the conspiracy. We therefore agree with counsel that appealing on this ground would be frivolous.

■ Next, counsel consider whether Brown could argue that the district court abused its discretion by denying him an in camera hearing to disclose the identity of certain confidential informants. As counsel note, defendants bear the burden of establishing a need for the information that outweighs the public interest in keeping the identities of informants secret. *See United States v. Valles,* 41 F.3d 355, 358 (7th Cir.1994). Here, Brown filed a pro se motion in the district court accusing the government of manufacturing the existence of confidential informants. He further claimed that even if the confidential informants did exist, they were lying regarding his involvement with the conspiracy. Such conclusory statements are not, however, sufficient to require the government to reveal the identity of confidential informants, *id.,* so we agree with counsel

that an appeal of this issue would be frivolous.

■ Counsel next consider whether Brown could appeal the district court's denial of his pro se motion for a bill of particulars. A defendant is entitled to such a bill where the indictment does not sufficiently appraise the defendant of the charges so that he or she can prepare for trial. *See United States v. Canino*, 949 F.2d 928, 949 (7th Cir.1991). Brown would have to argue that the district court abused its discretion by not ordering a bill of particulars, *id.*, which we agree with counsel would be frivolous considering the 52 detailed factual allegations in the indictment and its specificity regarding dates, times, places, and actors. *See United States v. Andrus*, 775 F.2d 825, 843 (7th Cir.1985) (no bill of particulars necessary where indictment charging defendant with conspiracy contained specific information regarding dates, activities, and actors).

We now address the two new potential arguments identified by Brown in his Circuit Rule 51(b) brief. First, he claims that it would not be frivolous to argue that the district court erred by not using Federal Rule of Criminal Procedure 41 to suppress evidence obtained through a pen register on Brown's co-conspirator's telephone. Rule 41, however, may not be used to suppress evidence, *see In re Search of the Office of Ken Tylman*, 245 F.3d 978, 980 (7th Cir.2001), so this argument would be frivolous.

■ Brown's other potential argument is that the government failed to properly authenticate the wiretap tapes used against him at trial. Audiotapes such as those here may be authenticated by establishing a chain of custody through clear and convincing evidence. *See Smith v. City of Chicago*, 242 F.3d 737, 741–42 (7th

Cir.2001). The FBI officer in charge of the Brown conspiracy investigation testified in depth as to the elaborate procedures for recording, handling, and protecting the original wiretap recordings. These procedures included storing the original tapes in a room to which only two people had access: the FBI officer and the record keeper. Brown presented nothing to rebut the chain of custody established through this testimony. We therefore think it would be frivolous to argue that the district court erred by admitting the tapes to evidence. *See Smith*, 242 F.3d at 742 (chain of custody established where officer's affidavit described office procedures for recording and handling tapes).

For the aforesaid reasons, we GRANT counsels' motion and DISMISS this appeal.