STICHTING TER BEHARTIGING VAN DE BELANGEN VAN OUDAAN-DEELHOUDERS IN HET KAPI-TAAL VAN SAYBOLT INTERNATIONAL B.V. (Foundation of the Former Shareholders of Saybolt International B.V.), Plaintiff,

v.

Philippe S.E. SCHREIBER and Walter, Conston, Alexander & Green P.C., Defendants.

No. 99 CIV 11441 JSR.

United States District Court, S.D. New York.

June 12, 2001.

Norris Wolff, Kleinberg, Kaplan, Wolff & Cohen, P.C., New York City, for plaintiff.

John Siffert, Rebecca Hollander–Blumoff, Daniel Reynolds, Lankler Siffert & Wohl LLP, for Philippe Schreiber.

David Ellenhorn, Margaret A. Dale, Caroline S. Press, Solomon, Zauderer, Ellenhorn, Frischer & Sharp, New York City, for Walter, Conston, Alexander & Green P.C.

## MEMORANDUM ORDER

RAKOFF, District Judge.

On defendants' instant motion for summary judgment, the pertinent facts, either undisputed or, where disputed, taken most favorably to the plaintiff, are as follows. Plaintiff, a Dutch entity, represents the former shareholders of Saybolt International B.V., a Dutch company that at all times here relevant was the parent of two American entities, Saybolt North America and Saybolt Inc. (collectively, "Saybolt"). In late 1995, officers of Saybolt, in order to obtain a lease concession in Panama, arranged through a foreign affiliate of Saybolt to pay a bribe to a Panamanian official, in violation of the Foreign Corrupt Practices Act ("FCPA"), 15 U.S.C. § 78dd–2. After the bribe was uncovered, a Grand Jury in the District of Massachusetts indicted both Saybolt companies, and separately a Grand Jury in the District of New Jersey indicted David Mead, chief executive officer of Saybolt Inc. and vice-president of Saybolt North America at the time of the Panamanian transaction, and Frerik Pluimers, president of Saybolt International B.V. and chairman of the board of Saybolt North America. The two Saybolt defendants pleaded guilty and Mead was convicted by a jury, but Pluimers remains a fugitive.

Prior to arranging the bribe, Saybolt received legal advice relating thereto from defendant Philippe Schreiber, a lawyer who was both Saybolt's legal counsel and a director of Saybolt North America, as well as of counsel to co-defendant law firm Walter, Conston, Alexander & Green. While Schreiber repeatedly advised Saybolt that payment of the Panamanian bribe would be illegal if made by an American company, he also, according to plaintiff, not only advised Saybolt that a bribe payment by a foreign affiliate might be legal but also failed to advise Saybolt that any involvement by Saybolt or its officers in arranging the affiliate's payment could result in criminal liability. Claiming that it was on the basis of this misleading advice that Saybolt then authorized the bribe to be paid, plaintiff then brought the instant action for legal malpractice against Schreiber and Walter, Conston, Alexander & Green.

Defendants seek summary judgment on the ground, *inter alia*, that whether or not Schreiber's advice was erroneous or misleading, it is clear that Saybolt did not rely on it. This is because, if Saybolt had in good faith relied on Schreiber's advice, Saybolt would have believed that its arranging the bribe through a foreign affiliate was permissible and thus Saybolt would have lacked the *mens rea* necessary for a criminal conviction of violating the FCPA; whereas it has already been conclusively established in both of the parallel criminal cases that Saybolt knew at the time it authorized the bribe that what it was doing was illegal and corrupt.

The Court entirely agrees with this argument. Indeed, the Court concludes that Saybolt's own guilty plea to criminally violating the FCPA in arranging the bribe is sufficient in itself to grant defendants' motion. To enter such a plea Saybolt had to affirm, as it did, that it undertook the misconduct in question with knowledge of the corruptness of its acts. *See* Plea Transcript at 17, 32, *United States v. Saybolt Inc.* (D.Mass. Dec. 3, 1998) (No. 98–10266), Schreiber Notice of Mot. Ex. 8. Since, if it had in fact relied on Schreiber's allegedly erroneous and misleading advice, Saybolt would not have believed at the time that its misconduct was unlawful or corrupt, it could never have made this admission at its allocution or, indeed, entered its guilty plea at all. Conversely, since Saybolt did in fact plead guilty and admit its criminal intent, it is bound by those admissions, and

therefore cannot now contend either that it relied on Schreiber's alleged advice or that that advice, even if erroneous, in any way proximately caused whatever damages, if any, were incurred by Saybolt. *See Tinelli v. Redl,* 199 F.3d 603, 606 (2d Cir.1999).

■ While Saybolt's guilty plea is therefore a sufficient basis in itself to grant defendants' motion, an independent and equally sufficient basis is provided by the collateral estoppel effect of the criminal proceedings that resulted in the conviction of Saybolt's former chief executive officer, Mead, whose own criminal *mens rea,* necessarily found by the jury that convicted him, is attributable to Saybolt by virtue of *respondeat superior, see New York v. Cedar Park Concrete Corp.,* No. 85 Civ. 1887, 1997 WL 306909, at *10 (S.D.N.Y. Mar. 21, 1997), *aff'd in relevant part sub nom. New York v. Julius Nasso Concrete Corp.,* 202 F.3d 82 (2d Cir.2000).[1]

Like Saybolt, Mead was convicted of violating the FCPA by arranging the bribe at issue in this case. *See* Indictment, *United States v. Mead* (D.N.J.1998) (Crim. No. 98–240–01), Schreiber Notice of Mot. Ex. 11. Not only was Mead's corrupt intent a necessary element of that conviction, but also the very claim on which plaintiff here relies—Schreiber's alleged failure to advise Saybolt and its officers that payment of the bribe would be illegal even if channeled through a foreign corporate affiliate if arranged by Saybolt's U.S.-based officers—was squarely put before, and rejected by, the jury that convicted Mead. Indeed, Mead's counsel, on summation, made this the cornerstone of his defense, repeatedly arguing that Mead lacked criminal intent because he relied on Schreiber's allegedly erroneous and/or inadequate advice. *See* Trial Transcript at vol. 6 pp. 44–64, *United States v. Mead* (D.N.J. Oct. 14, 1998) (Crim. No. 98–240–01), Reynolds Dec. 1, 2000 letter Ex. 1 (summation of defense counsel). Further still, the Court in Mead's trial specifically instructed the jury not to convict if it found that Mead believed that payment of the bribe was legal, *see id.* at vol. 6, p. 131 (jury charge). Thus, by convicting Mead the jury necessarily determined that he— and thus Saybolt—acted in knowing violation of the law despite Schreiber's alleged advice.

■ Like Saybolt's own admissions of criminal intent, the jury's determination of Mead's criminal intent and its rejection of his defense based on Schreiber's alleged advice must be accorded issue-preclusive effect in the instant litigation. For collateral estoppel to apply, the party to be precluded must have been, or been in sufficient privity to, a party to the prior litigation. In addition, "the court must determine that (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." *Julius Nasso Concrete,* 202 F.3d at 86 (internal quotation marks omitted). Since plaintiff here is simply Saybolt's assignee, there is obvious privity with respect to Saybolt's own plea; and even though Saybolt was not a party to the Mead criminal case, Mead was indicted and convicted for criminal activity he undertook for Say-

---

1. Although plaintiff alleges Mead was no longer an officer or employee of the Saybolt companies at the time he was tried, the trial concerned his actions and intent at the time he was chief executive officer of Saybolt and authorized the bribe on Saybolt's behalf, in which case his *mens rea* at that time is still attributable to Saybolt. *See, e.g., Brink's Inc. v. City of New York,* 717 F.2d 700, 710 (2d Cir.1983).

bolt's benefit in his capacity as chief executive officer of Saybolt, and his intent is therefore directly imputable to Saybolt. *See Julius Nasso Concrete,* 202 F.3d at 87, *aff'g Cedar Park Concrete,* 1997 WL 306909, at *9.

Regarding the other four elements: first, the issue of criminal intent decided in the two criminal cases is identical to, and dispositive of, a necessary element of plaintiff's instant claim that plaintiff was injured by Schreiber's allegedly erroneous advice, since if Saybolt knew its actions were wrongful, regardless of the advice allegedly given by Schreiber, then Schreiber's advice was neither materially relied upon by Saybolt nor proximately caused any injury to Saybolt. Second, as shown above, the question of Saybolt's knowing illegality was unquestionably actually litigated and decided in both criminal cases. Third, the parties in both of the criminal cases were able to fully and fairly litigate this issue, and had ample incentive to do so. Indeed, Mead, facing incarceration, had the strongest possible incentive to defend against the criminal charges brought against him; and while plaintiff argues that Saybolt, which paid a $1.5 million fine, had no incentive to litigate because by the terms of Saybolt's sale (consummated after the events that precipitated this lawsuit) the fine was paid out of monies that would have reverted to Saybolt's former shareholders had Saybolt escaped monetary penalty, the prospect of a felony conviction (not to mention its collateral civil consequences) was more than ample incentive to defend, *see Raiford v. Abney,* 695 F.2d 521, 524 (11th Cir.1983). Finally, as previously shown, knowing and corrupt intent was absolutely necessary to support both Saybolt's and Mead's convictions.

While the Court has carefully considered, and rejected, plaintiff's other arguments, only one even merits mention. Plaintiff contends that even if all the factors of collateral estoppel are satisfied, application of the doctrine is unfair under these circumstances and thus the Court should exercise its discretion to permit relitigation. *See Remington Rand Corp. v. Amsterdam–Rotterdam Bank, N.V.,* 68 F.3d 1478, 1486 (2d Cir.1995).[2] Specifically, plaintiff claims that if, notwithstanding Saybolt's corrupt intent, Schreiber had expressly told them that what they were proposing was illegal, they would not have arranged the bribe. Aside from its speculative nature, however, this and other equitable arguments advanced by plaintiff are singularly unappealing and unpersuasive. Saybolt, on any view of the facts, undertook to arrange the bribe of a high-ranking official of Panama, a despicable act of corruption designed to enhance Saybolt's profits at the expense of the most elementary principles of honest government. Saybolt's former shareholders who stood to reap the financial benefits of that corrupt activity can hardly complain of the losses attendant on the exposure of those crimes.

Accordingly, defendants' motion for summary judgment in their favor is hereby granted, and the complaint is dismissed with prejudice. Clerk to enter judgment.

SO ORDERED.

---

**2.** By contrast with the instant case, *Remington Rand* involved the use of offensive collateral estoppel (in which a plaintiff seeks to invoke a prior judgment against a previously losing defendant), in which case courts must be particularly concerned about the fairness of applying issue preclusion when the defendant, who lost in the prior judgment, had little incentive to litigate. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 330, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Remington Rand,* 68 F.3d at 1486.