327 F.3d 173
 STICHTING TER BEHARTIGING VAN DE BELANGEN VAN OUDAANDEELHOUDERS IN HET KAPITAAL VAN SAYBOLT INTERNATIONAL B.V. (Foundation of the Shareholders' Committee Representing the Former Shareholders of Saybolt International B.V.), Plaintiff-Appellant,
v.
Phillippe S.E. SCHREIBER and Walter, Conston, Alexander & Green, P.C., Defendants-Third-Party-Plaintiffs-Appellees,
DWYER & COLLORA LLP, Third-Party-Defendant.
 Docket No. 01-7811.
 United States Court of Appeals, Second Circuit.
 Argued: April 30, 2002.
 Decided: April 21, 2003.
 
 Norris D. Wolff, Kleinberg, Kaplan, Wolff & Cohen, P.C. (Edward P. Grosz, Denise Rubin Glatter, on the brief), New York, NY, for Plaintiff-Appellant.
 Daniel E. Reynolds, Lankler Siffert & Wohl LLP (John S. Siffert, on the brief), New York, NY, for Defendant-Third-Party-Plaintiff-Appellee Philippe S.E. Schreiber.
 David N. Ellenhorn, Solomon, Zauderer, Ellenhorn, Frischer & Sharp (Margaret A. Dale, Caroline S. Press, on the brief), New York, NY, for Defendant-Third-Party-Plaintiff-Appellee Walter, Conston, Alexander & Green, P.C.
 Before: MINER and SACK, Circuit Judges, and BERMAN, District Judge.*
 SACK, Circuit Judge.
 
 
 1
 The plaintiff, Stichting ter behartiging van de belangen van oudaandeelhouders in het kapitaal van Saybolt International B.V. (Foundation of the Shareholders' Committee Representing the Former Shareholders of Saybolt International B.V.), appeals from a decision of the United States District Court for the Southern District of New York (Jed S. Rakoff, Judge) granting the defendants' motion for summary judgment. See Stichting Ter behartiging Van de Belangen Van Oudaandeelhouders in Het Kapitaal Van Saybolt International B.V. v. Schreiber, 145 F.Supp.2d 356 (S.D.N.Y.2001) ("Stichting"). The plaintiff claims that the erroneous legal advice given by defendant Philippe E. Schreiber caused a United States-based corporation that was a subsidiary of a Dutch company to violate the Foreign Corrupt Practices Act, 15 U.S.C. §§ 78dd-1, et seq. ("FCPA"). The corporation pleaded guilty in a Massachusetts federal district court to violating the FCPA, and its former chief executive officer ("CEO") was convicted of violating the FCPA by a New Jersey federal district court jury.
 
 
 2
 In the case at bar, the district court concluded that the guilty plea and the conviction collaterally estop the plaintiff, as the corporation's assignee, from claiming that Schreiber caused the corporation to think that its acts would not violate the FCPA. We disagree with the district court's conclusion that the corporation's guilty plea is inconsistent with the plaintiff's theory of how Schreiber misled the corporation. We also disagree with the district court's conclusion that the corporation was in privity with its former CEO at the time of his trial and therefore is bound by the trial's outcome. We vacate the judgment and remand for further proceedings consistent with this opinion. In so doing, we do not question the validity of either the plea or the conviction.
 
 BACKGROUND
 
 3
 This appeal is from the district court's grant of the defendants' motion for summary judgment. The facts we adduce here are undisputed except as otherwise noted.
 
 
 The Bribe
 
 
 4
 In 1995, Saybolt International was a private Dutch limited-liability company whose various worldwide subsidiaries were engaged in "the business of performing quantitative and qualitative testing of bulk commodities such as oil, gasoline, and other petrochemicals, as well as grains [and] vegetable oils." Am. Compl. ¶ 20. Saybolt International owned Saybolt North America, Inc., a Delaware corporation with principal offices in Parsippany, New Jersey.[1] All directors and officers of Saybolt North America were also directors or officers of Saybolt International. One such person was David H. Mead, who served as chief executive officer of Saybolt North America and as an officer and director of Saybolt International. Mead also served as the de facto head of all operations under the control of Saybolt International in the Western Hemisphere.
 
 
 5
 Beginning in late 1994 or early 1995, Saybolt de Panama S.A. ("Saybolt de Panama"), a subsidiary of Saybolt International under Mead's supervision, sought to acquire property in Panama for the construction of a laboratory and office complex. Sometime in 1995, Mead was told that Saybolt de Panama had identified suitable property in the Panama Canal Zone but that the lease could be acquired only if the company would first pay a $50,000 bribe to a Panamanian government official.
 
 
 6
 Mead raised the issue of the bribe in a Saybolt North America board meeting held in New Jersey on November 9, 1995. Schreiber, a lawyer admitted to practice in New York State, was present at the meeting. In addition to serving as a director of Saybolt North America, Schreiber occasionally provided legal services to the corporation. At the meeting, Schreiber advised those present that Saybolt North America could not pay the proposed bribe to the Panamanian official without subjecting the corporation and its officers and directors to potential liability. Then and in the weeks that followed, however, Schreiber allegedly led Mead and others to believe that "the bribe payment could legally be made under U.S. law by [their] Dutch affiliate," Saybolt International. Am. Compl. ¶ 13. Allegedly on this basis, on December 17, 1995, an employee of Saybolt North America traveled by commercial airline from New Jersey to Panama for purposes of arranging the bribe. On December 21, 1995, Saybolt International wired $50,000 from the Netherlands to a bank account controlled by Saybolt de Panama. The Saybolt North America employee then directed an employee of Saybolt de Panama to deliver the $50,000 to an individual acting as an intermediary for the Panamanian official.
 
 
 The Criminal Proceedings
 
 
 7
 On November 20, 1996, United States officials investigating possible environmental crimes by Saybolt North America executed a search warrant at its offices in New Jersey. The search uncovered evidence of the Panama bribe.
 
 
 8
 Shortly thereafter, on May 12, 1997, Core Laboratories, N.V. ("Core") purchased Saybolt International and its controlling interest in Saybolt North America. Pursuant to the purchase agreement, Saybolt International's former shareholders placed $6 million in escrow to cover any criminal liability that might arise from the company's activities in Panama. In exchange, Core assigned the former shareholders all causes of action for any legal malpractice related to the Panama incident.
 
 
 9
 United States prosecutors decided to bring separate criminal proceedings against Saybolt North America and its officers. Mead was arrested in January 1998, at which point he stopped actively working for the various Saybolt entities, which were by then part of Core. On April 20, 1998, a federal grand jury in the District of New Jersey returned an indictment charging Mead with, inter alia, violating the FCPA, 15 U.S.C. § 78dd-2(a)(3), and conspiring to violate the FCPA, 18 U.S.C. § 371.
 
 
 10
 At about that time, the United States Attorney for the District of Massachusetts and the United States Attorney for the District of New Jersey jointly issued an information charging Saybolt North America with substantially the same offenses charged in Mead's indictment: violating, and conspiring to violate, the FCPA. On August 18, 1998, officers of Core caused Saybolt North America to enter into a plea agreement in which Saybolt North America promised to "cooperate truthfully and completely with the United States ... in any trial or other proceedings arising out of this investigation of [Saybolt North America] and any of [its] present and former officers and employees." On December 3, 1998, Saybolt North America pleaded guilty to the charges in the information before the United States District Court for the District of Massachusetts (William G. Young, Judge). In the plea colloquy, the court instructed John D. Denson, the Core officer representing Saybolt North America, as follows:
 
 
 11
 You understand that before the corporation or corporations can be found guilty of [violating the FCPA], the government would have to prove beyond a reasonable doubt that an agent of the corporation, acting for the corporation and so situated with respect to the management of the corporation[] that the act or acts can properly be considered the acts of the corporation itself, has to have entered into a corrupt, that is, a bribe-like transaction in the international commerce of the United States. It has to be not just that there was a mistake, that this agent or agents of the corporations knew what they were doing.
 
 
 12
 Do you understand that? Denson answered "Yes, sir." The court then entered judgment against the corporation.
 
 
 13
 Unlike his former employer, Mead decided to fight the charges against him. His case went to trial before the United States District Court for the District of New Jersey (Anne E. Thompson, Judge) in early October 1998. At trial, Mead presented evidence that, Mead contended, suggested that Schreiber led Mead to believe that "the bribe payment could legally be made," Am. Compl. ¶ 13, if the bribe of the Panamanian official were paid by a non-United States entity. The court instructed the jury that "[i]f the evidence shows you that the defendant actually believed that the transaction was legal, he cannot be convicted." Mead Trial Tr. at 6.131. The jury convicted Mead on both charges, and the district court sentenced him to four months' imprisonment and a $20,000 fine.
 
 
 The Malpractice Suit
 
 
 14
 Saybolt International's former shareholders assigned their legal malpractice causes of action to the plaintiff, which brought this diversity action in the United States District Court for the Southern District of New York on November 18, 1999. In its amended complaint, the plaintiff alleged that Schreiber, and through him Walter, Conston, Alexander & Green, P.C., defendant-third-party-plaintiff, a law firm with which Schreiber was affiliated, committed legal malpractice by failing to advise Saybolt North America that "the bribe payment as proposed to be paid by a Dutch company to Panamanian officials would violate the FCPA." Am. Compl. ¶ 110. Without Schreiber's malpractice, the amended complaint alleged, "the bribe payment would not have been made, even at the cost of the entire Panama deal." Am. Compl. ¶ 111. The plaintiff further alleged that by committing such malpractice, Schreiber also breached his lawyer's fiduciary duty to Saybolt North America and breached his contract to provide competent professional services. Finally, the plaintiff alleged that Schreiber's malpractice cost the former Saybolt International shareholders $4.2 million, mostly in criminal fines.
 
 
 15
 In a June 12, 2001, Memorandum Order, the district court granted the defendants' motion for summary judgment on all claims. Stichting, 145 F.Supp.2d at 359. The court noted that the plaintiff alleged that Schreiber's erroneous advice led Saybolt North America to act without the knowledge that its conduct violated United States law. Id. at 357. The court then held that this allegation necessarily contradicts Saybolt North America's guilty plea to the charges that it violated the FCPA:
 
 
 16
 To enter such a plea Saybolt [North America] had to affirm, as it did, that it undertook the misconduct in question with knowledge of the corruptness of its acts. Since, if it had in fact relied on Schreiber's allegedly erroneous and misleading advice, Saybolt [North America] would not have believed at the time that its misconduct was unlawful or corrupt, it could never have made this admission at its allocution or, indeed, entered its guilty plea at all.
 
 
 17
 Id. (citations to the record omitted). On this basis, the district court concluded that under the doctrine of collateral estoppel, Saybolt North America's guilty plea forecloses the plaintiff's theory of causation. "[S]ince Saybolt did ... plead guilty and admit its criminal intent, it is bound by those admissions, and therefore cannot now contend either that it relied on Schreiber's alleged advice or that that advice, even if erroneous, ... proximately caused whatever damages ... were incurred by Saybolt." Id. at 357-58.
 
 
 18
 The district court also held that Mead's criminal convictions are an independent basis for entering judgment against the plaintiff. Id. at 358. The court observed that the plaintiff's theory of how Schreiber misled Saybolt North America had been "squarely put before, and rejected by, the jury that convicted Mead." Id. The court then held that "Mead was indicted and convicted for criminal activity he undertook for [the corporation's] benefit in his capacity as chief executive officer ..., and his intent is therefore directly imputable" to the corporation. Id. at 358-59. On this basis, the district court concluded that the plaintiff is collaterally estopped from relitigating the issue of Saybolt North America's reliance on Schreiber's legal advice. Id.
 
 
 19
 The plaintiff appealed.
 
 DISCUSSION
 I. Standard of Review
 
 20
 We review a district court's grant of summary judgment de novo, construing the evidence in the light most favorable to the non-moving party. Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir.1999), cert. denied, 529 U.S. 1098, 120 S.Ct. 1832, 146 L.Ed.2d 776 (2000). A district court must grant a motion for summary judgment if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law," Fed.R.Civ.P. 56(c), i.e., "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A fact is "material" for these purposes if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.
 
 II. The Guilty Plea
 
 21
 As indicated, the district court held that Saybolt North America's guilty plea constituted an admission that the corporation acted with knowledge that its conduct was "unlawful or corrupt." Stichting, 145 F.Supp.2d at 357. For this reason, the district court concluded that the plaintiff is collaterally estopped from arguing that Schreiber led Saybolt North America to believe that its acts would not violate the FCPA. The plaintiff challenges this conclusion on appeal. We agree with the plaintiff.
 
 
 A. The Elements of the Crime
 
 The FCPA provides in relevant part:
 
 22
 It shall be unlawful for any domestic concern ..., or for any officer, director, employee, or agent of such domestic concern ..., to make use of the mails or any means or instrumentality of interstate commerce corruptly in furtherance of an offer, payment, [or] promise to pay... anything of value to —
 
 
 23
 ...
 
 
 24
 (3) any person, while knowing that all or a portion of such money ... will be offered, given, or promised, directly or indirectly, to any foreign official ... for purposes of —
 
 
 25
 (A)(i) influencing any act or decision of such foreign official ... in his ... official capacity....
 
 
 26
 15 U.S.C. § 78dd-2(a). Thus, in order to obtain a conviction under this portion of the statute, the government must prove beyond a reasonable doubt that the defendant is
 
 
 27
 1. a domestic concern 2. that made use of a means or instrumentality of interstate commerce
 
 3. corruptly
 
 28
 4. in furtherance of an offer or payment of anything of value to any person
 
 
 29
 5. while knowing that the money would be offered or given directly or indirectly to any foreign official
 
 
 30
 6. for purposes of influencing any act or decision of such foreign official in his official capacity.
 
 
 31
 Those are the six elements of the crime for purposes of determining to what Saybolt North America admitted when it pleaded guilty of violating the FCPA.
 
 
 32
 We agree with the district court's premise that Saybolt North America's guilty plea was properly entered and constituted an admission to each of the elements of the crime. McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969) ("[A] guilty plea is an admission of all the elements of a formal criminal charge."). We also agree that this guilty plea would collaterally estop Saybolt North America from proceeding with a malpractice claim requiring it to prove a fact that is contrary to any one of the elements of the crime to which it pleaded guilty. See United States v. Podell, 572 F.2d 31, 35 (2d Cir.1978) ("[A] criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel ... in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case.").[2] The question, then, is whether there is a contradiction between the criminal convictions of Saybolt North America and the civil suit the plaintiff seeks to prosecute. We think not.
 
 
 33
 As the district court described it, the plaintiff's claim in its civil suit is that its lawyer, Schreiber, "advised Saybolt [North America] that a bribe payment by a foreign affiliate might be legal but also failed to advise Saybolt [North America] that any involvement by Saybolt [North America] or its officers in arranging the affiliate's payment could result in criminal liability." Stichting, 145 F.Supp.2d at 357. "[I]f Saybolt [North America] had in good faith relied on Schreiber's advice, Saybolt [North America] would have believed that its arranging the bribe through a foreign affiliate was permissible." Id.
 
 
 34
 By pleading guilty, Saybolt North America admitted the six elements of the FCPA crime: that (1) it was a domestic concern, (2) that it made use of a means or instrumentality of interstate commerce, (3) corruptly, (4) in furtherance of an offer or payment of something of value to a person, (5) while knowing that the money would be offered or given directly or indirectly to a foreign official, (6) for purposes of influencing an act or decision of that foreign official in his official capacity. But by pleading guilty, Saybolt North America did not admit that at the time of the criminal act it knew that the act of arranging, rather than paying, such a bribe was criminal. Knowledge by a defendant that it is violating the FCPA — that it is committing all the elements of an FCPA violation — is not itself an element of the FCPA crime. Federal statutes in which the defendant's knowledge that he or she is violating the statute is an element of the violation are rare;[3] the FCPA is plainly not such a statute. Saybolt North America did not, therefore, by pleading guilty, preclude an assertion in a subsequent civil action — the case at bar — that it did not know it was violating the FCPA at the time of the violation.
 
 
 35
 The plaintiff is thus not collaterally estopped by Saybolt North America's criminal plea from arguing in this civil suit that, even though Saybolt North America admittedly did commit a violation of the FCPA, it did not know that it was committing a violation of the FCPA at the time; that it did not know it was committing such a violation because Schreiber negligently told it that it was not committing a violation by causing a foreign entity to pay the bribe; and that it suffered damages as a result of the negligent advice.
 
 
 36
 We therefore conclude that the case should be remanded to the district court to permit the plaintiff to attempt to establish what the district court identified as its claim: that the defendant advised Saybolt North America that a bribe payment by a foreign affiliate might be legal, but failed to advise Saybolt North America that any involvement by Saybolt North America or its officers in arranging the affiliate's payment could result in criminal liability, i.e., as stated in the Complaint, that "Schreiber erroneously advised [Saybolt North America] that the bribe payment could legally be made under U.S. law by a Dutch affiliate," Am. Compl. ¶ 13; and that, as stated by the district court, Saybolt North America "in good faith relied on Schreiber's advice" that "arranging the bribe through a foreign affiliate was permissible," Stichting, 145 F.Supp.2d at 357.
 
 
 B. The "Corruptly" Element
 
 
 37
 To be sure, by pleading guilty, Saybolt North America admitted that it acted "corruptly" — the element of the crime that we numbered "3" in the discussion above — in its actions related to the Panamanian bribe. The defendants see in this admission a collateral bar to the plaintiff's assertion that Saybolt North America did not know that it was violating the FCPA at the relevant time and, indeed, was misled into believing that it was acting legally. The district court apparently agreed. See Stichting, 145 F.Supp.2d at 357.[4] We do not. We conclude that an admission that an act was done "corruptly" in this context is not equivalent to an admission that the person committing it knew that it violated the particular law at the time the act was performed.
 
 
 38
 It is difficult to determine the meaning of the word "corruptly" simply by reading it in context. We therefore look outside the text of the statute to determine its intended meaning. See In re Venture Mortgage Fund, L.P., 282 F.3d 185, 188 (2d Cir.2002) ("Legislative history and other tools of interpretation may be relied upon only if the terms of the statute are ambiguous." (citation and internal quotation marks omitted)).
 
 
 39
 The Senate Report for the FCPA explains the statute's use of the term "corruptly" as follows:
 
 
 40
 The word "corruptly" is used [in the FCPA] in order to make clear that the offer, payment, promise, or gift, must be intended to induce the recipient to misuse his official position in order to wrongfully direct business to the payor or his client, or to obtain preferential legislation or a favorable regulation. The word "corruptly" connotes an evil motive or purpose, an intent to wrongfully influence the recipient.
 
 
 41
 S.Rep. No. 95-114, at 10 (1977), reprinted in 1977 U.S.C.C.A.N. 4098, 4108. The 1977 House Report uses a similar description, adding that the word "corruptly" in the FCPA is intended to have the same meaning as in 18 U.S.C. § 201,[5] the federal statute criminalizing the bribing of a federal official. See H.R.Rep. No. 95-640, at 7-8 (1977).
 
 
 42
 The Senate's explanation of the term "corruptly" tracks closely our interpretation of that term in 18 U.S.C. § 201(b). We have repeatedly held in that context that "a fundamental component of a `corrupt' act is a breach of some official duty owed to the government or the public at large." United States v. Rooney, 37 F.3d 847, 852 (2d Cir.1994); accord United States v. Zacher, 586 F.2d 912, 915 (2d Cir.1978) ("The common thread that runs through common law and statutory formulations of the crime of bribery is the element of corruption, breach of trust, or violation of duty."). We have also, in the context of the federal statute criminalizing the bribing of agents of financial institutions,[6] approved jury instructions providing that a person acts "corruptly" if he or she acts with a "bad purpose." United States v. McElroy, 910 F.2d 1016, 1026 (2d Cir.1990). Our case law defining the term "corruptly" in federal bribery statutes thus parallels the Senate Report's explanation of the term as denoting an evil motive or purpose and an intent to induce an official to misuse his position.
 
 
 43
 We also note that the text of 18 U.S.C. § 201(b) is highly similar to that part of the FCPA that follows the term "corruptly."[7] The similarity further suggests that Congress intended to incorporate within the FCPA the elements of the crime of bribery, which we have described broadly as "in essence ... an attempt to influence another to disregard his duty while continuing to appear devoted to it or to repay trust with disloyalty." United States ex rel. Sollazzo v. Esperdy, 285 F.2d 341, 342 (2d Cir.), cert. denied, 366 U.S. 905, 81 S.Ct. 1049, 6 L.Ed.2d 204 (1961); see also United States v. Jacobs, 431 F.2d 754, 759 (2d Cir.1970) ("The evil sought to be prevented by the deterrent effect of 18 U.S.C. § 201(b) is the aftermath suffered by the public when an official is corrupted and thereby perfidiously fails to perform his public service and duty."), cert. denied, 402 U.S. 950, 91 S.Ct. 1613, 29 L.Ed.2d 120 (1971).
 
 
 44
 We thus conclude that the word "corruptly" in the FCPA signifies, in addition to the element of "general intent" present in most criminal statutes,[8] a bad or wrongful purpose and an intent to influence a foreign official to misuse his official position. But there is nothing in that word or any thing else in the FCPA that indicates that the government must establish that the defendant in fact knew that his or her conduct violated the FCPA to be guilty of such a violation.[9]
 
 
 45
 Finally in this connection, we note that had Saybolt North America gone to trial, it would have been allowed to present evidence that it relied on Schreiber's advice that the benefit sought from the Panamanian official would not require the official to misuse his position or breach his duties — i.e., that it did not act corruptly — precisely because "corruptly" is an element of the offense. Saybolt North America also would have been allowed a jury instruction on this allegation. See United States v. Carr, 740 F.2d 339, 346 n. 11 (5th Cir.1984) ("[R]eliance on advice of counsel... is the basis for a jury instruction on whether or not the defendant possessed the requisite specific intent."), cert. denied, 471 U.S. 1004, 105 S.Ct. 1865, 85 L.Ed.2d 159 (1985). By pleading guilty, Saybolt North America effectively admitted that it could not factually support such a theory of reliance.
 
 
 46
 But Saybolt North America would not properly have been entitled to a jury instruction on an allegation that Schreiber led it to believe that its acts did not violate the FCPA. A defense of reliance on advice of counsel is available only to the extent that it might show that a defendant lacked the requisite specific intent, id., and specific intent to violate the FCPA is not an element of an FCPA violation. Thus, Saybolt North America's guilty plea does not constitute an admission that it could not factually support the theory of reliance on counsel that is the basis of the plaintiff's malpractice action.
 
 
 C. Conclusion
 
 
 47
 We conclude that the question whether Saybolt North America acted with knowledge that its conduct violated the FCPA was not answered by its guilty plea, and thus that the plea does not collaterally estop the plaintiff from litigating the issue in its claim against Schreiber and the law firm with which he was affiliated. See N.L.R.B. v. Thalbo Corp., 171 F.3d 102, 109 (2d Cir.1999) (collateral estoppel applies only to issues "actually decided" in the previous proceeding).[10]
 
 III. The Conviction of Mead
 
 48
 The district court, as we have noted, also held that Mead's conviction under the FCPA precludes the plaintiff from pursuing its malpractice claim against Schreiber. The district court observed that Mead asserted an advice-of-counsel defense at trial, and that the trial court instructed the jury to convict Mead only if it found that Mead did not believe that the transactions were legal. The court then concluded that because the jury convicted Mead, the plaintiff is precluded from arguing that Schreiber led Saybolt North America to act with the belief that its conduct did not violate the FCPA. 145 F.Supp.2d at 358.
 
 
 49
 Collateral estoppel applies only against a party to a previous adjudication and that party's "privies." Thalbo, 171 F.3d at 109. The plaintiff was not a party to Mead's prosecution, and neither was Saybolt North America.[11] Thus, the district court's application of collateral estoppel is correct only if Saybolt North America was in privity with Mead at the relevant time, i.e., during Mead's trial. The plaintiff's primary argument challenging the district court's application of collateral estoppel based on the Mead conviction is that Saybolt North America was not in privity with Mead at the relevant time.[12] For the reasons stated below, we agree with the plaintiff.
 
 
 50
 
 A. The Collateral Estoppel Doctrine of Privity
 
 
 
 51
 The doctrines of collateral estoppel in general, and of privity in particular, are shaped by fundamental notions of due process. See Expert Elec., Inc. v. Levine, 554 F.2d 1227, 1233 (2d Cir.) ("The threshold requirement of identity of parties, qualified by the doctrine of privity, finds its roots in the ancient notion, now supplemented by the due process clause, that a person cannot be bound by a judgment without notice of a claim and an opportunity to be heard."), cert. denied, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977). Because of these due process concerns, we have generally held that a determination in a prior judicial proceeding collaterally estops a claim by a nonparty only if that nonparty was represented by a party to the prior proceeding, or exercised some degree of actual control over the presentation on behalf of a party to that proceeding. Id.
 
 
 52
 We recognize privity based on representation only if the interests of the person alleged to be in privity were "represented [in the prior proceeding] by another vested with the authority of representation." Monahan v. New York City Dep't of Corrections, 214 F.3d 275, 285 (2d Cir.) (quoting Alpert's Newspaper Delivery, Inc. v. The New York Times Co., 876 F.2d 266, 270 (2d Cir.1989)), cert. denied, 531 U.S. 1035, 121 S.Ct. 623, 148 L.Ed.2d 533 (2000); see also Amalgamated Sugar Co. v. NL Indus., Inc., 825 F.2d 634, 640 (2d Cir.) ("[O]ne whose interests were adequately represented by another vested with the authority of representation is bound by the judgment.") (quoting Expert Elec., 554 F.2d at 1233 (internal quotation marks omitted)), cert. denied, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1987). We have thus found privity where a party to a previous suit was, at the time of the litigation, acting as either a fiduciary or organizational agent of the person against whom preclusion is asserted. See, e.g., Monahan, 214 F.3d at 285-86 (holding that union members are bound by a judgment in a previous action brought by the union president in his capacity as president); United States v. Int'l Bhd. of Teamsters, 931 F.2d 177, 185-86 (2d Cir.1991) (holding that union subordinate entities are bound by the terms of a consent decree entered by the union); United States v. Int'l Bhd. of Teamsters, 905 F.2d 610, 621 (2d Cir.1990) (holding that a union official is bound by the terms of a consent decree entered by the union); Amalgamated Sugar, 825 F.2d at 640 (holding that a shareholder suit regarding a corporate matter is precluded by judgment entered against a corporation in an action managed by its board of directors); Expert Elec., 554 F.2d at 1234 (holding that contractors are estopped from re-litigating issues decided in a proceeding against their agent, a professional association created to represent contractors in labor negotiations); see also Sea-Land Servs., Inc. v. Gaudet, 414 U.S. 573, 592-93, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974) (noting that a decedent's dependents can be precluded from re-litigating issues decided in a prior suit brought by the decedent during his lifetime).
 
 
 53
 In those cases where we have applied the doctrine of privity to a person who was not represented by a fiduciary or agent in the previous litigation, we have found that that person nonetheless exercised some degree of actual control over the presentation of a party's case at the previous proceeding. See, e.g., Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 368-369 (2d Cir.1995) (applying collateral estoppel against an entity that "controlled or substantially participated in the control of the presentation on behalf of a party to the prior action" (internal quotation marks and punctuation omitted) (quoting Nat'l Fuel Gas Distribution Corp. v. TGX Corp., 950 F.2d 829, 839 (2d Cir.1991))). Preclusion is thus found to apply against a person who, although not party to the previous litigation, served in a representative capacity to direct that litigation, Central Hudson, 56 F.3d at 363, 369, or who, "with the guidance of [his] law firm, formulated an overarching strategy for the two actions," Ruiz v. Comm'r of Dep't of Transp., 858 F.2d 898, 903 (2d Cir.1988).[13]
 
 
 54
 As these cases suggest, the question whether parties are in privity is "a factual determination of substance, not mere form." Expert Elec., 554 F.2d at 1233. For this reason, "preclusion principles must not be applied mechanically." Nat'l Fuel, 950 F.2d at 839 (citation and internal quotation marks omitted). Our determination of the question of collateral estoppel in this case thus depends on the fact-specific nature of Saybolt North America's relationship with Mead.
 
 
 55
 Before beginning our review of the facts, we note further that we must be careful not to conflate the doctrines of collateral estoppel and respondeat superior. They are similar in the sense that both require a factual inquiry into the closeness of the relationship between principal and agent. The distinct natures of the doctrines, however, require inquiries into the closeness of the relationship at different points. Because the doctrine of respondeat superior asks whether an agent's action, and his or her state of mind when he or she undertook the action, are imputable to the principal, a relevant inquiry is the closeness of the relationship at the time of the act in question. In contrast, because the doctrine of collateral estoppel asks whether a party is bound by the result of a prior judicial proceeding, and thus implicates the due process rights to notice and an opportunity to be heard, the relevant inquiry is the closeness of the relationship at the time of the prior proceeding.[14] The parties do not dispute that Saybolt North America is responsible under the principle of respondeat superior for Mead's actions in violation of the FCPA. Thus, the inquiry in this case is limited to the closeness of Mead's relationship with Saybolt North America at the time of Mead's trial.
 
 
 B. Application to this Case
 
 
 56
 In inquiring into the relationship between Mead and Saybolt North America during Mead's trial, we construe the facts on the motion for summary judgment in the light most favorable to the plaintiff, the nonmoving party. See S.E.C. v. Monarch Funding Corp., 192 F.3d 295, 303 (2d Cir.1999). Based on the record before us thus construed, we conclude that the defendants have not established as a matter of law that Mead was vested with the authority to represent Saybolt North America during his trial or that Saybolt North America exercised actual control over the presentation of Mead's case. We thus conclude that the defendants have not proven as a matter of law that there was the necessary privity between the parties.
 
 
 57
 Mead was not vested with the authority to represent Saybolt North America because he was neither a fiduciary nor an agent of Saybolt North America during his trial. Saybolt International released Mead from his duties as an officer and active employee of the various Saybolt entities when he was arrested. Although Mead continued to receive pay from Saybolt North America during his trial pursuant to an early retirement package, neither this nor any other evidence in the record suggests that an agency relationship survived Mead's arrest. The general rule of agency is that "principals may terminate an agency relationship at any time." Gov't Guar. Fund of Republic of Fin. v. Hyatt Corp., 95 F.3d 291, 300 (3d Cir.1996) (quoting Restatement (Second) of Agency §§ 138, 139 (1958)).[15] We have found nothing in the record to support the conclusion that Saybolt International did not, prior to Mead's criminal trial, effectively revoke Mead's power to represent it and its subsidiaries.
 
 
 58
 We also can find nothing in the record to suggest that Saybolt North America exercised any degree of actual control over Mead's conduct of his defense. As indicated, privity under such a theory depends on a finding that the person against whom collateral estoppel is applied actively participated in the previous litigation. Nothing in the record suggests that Saybolt North America's directors, shareholders, or officers controlled Mead's trial strategy. Saybolt North America no longer actively employed Mead at that time. And while Saybolt North America paid Mead's legal fees for a period, it stopped doing so before his trial. And strikingly, before Mead's trial, Saybolt North America promised, as part of its plea agreement with the government, to "cooperate truthfully and completely with the United States ... in any trial or other proceedings arising out of this investigation of [its] present and former officers and employees." The fact that Saybolt North America would have violated its plea agreement had it assisted Mead during his trial militates against a finding of privity based on a theory of actual control.[16]
 
 
 59
 We conclude that the defendants have not established as a matter of law that Saybolt North America was in privity with Mead at the time of Mead's trial. Thus, the plaintiff is not collaterally estopped by Mead's conviction from pursuing its claims against Schreiber.[17]
 
 CONCLUSION
 
 60
 For the foregoing reasons, the judgment of the district court is vacated, and the case remanded for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 *
 The Honorable Richard M. Berman, of the United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 Saybolt North America owned a subsidiary, also based in New Jersey and incorporated in Delaware, named "Saybolt, Inc." The distinction between these two United States corporations is not important for purposes of this appeal, and the term "Saybolt North America" will refer to both
 
 
 [2]
 Although our jurisdiction in this case is based on diversity of citizenship, we apply federal law of collateral estoppel to determine the preclusive effect of a federal convictionGelb v. Royal Globe Ins. Co., 798 F.2d 38, 42-43 (2d Cir.1986), cert. denied, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987). The test for collateral estoppel under federal law is as follows:
 [A] judgment in a prior proceeding bars a party and its privies from relitigating an issue if, but only if: (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.
 N.L.R.B. v. Thalbo Corp., 171 F.3d 102, 109 (2d Cir.1999) (citation and internal quotation marks omitted).
 
 
 [3]
 They appear to consist mainly of tax and other technical statutes that use the term "willfully."See Bryan v. United States, 524 U.S. 184, 193-94, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998).
 
 
 [4]
 To enter such a plea Saybolt [North America] had to affirm, as it did, that it undertook the misconduct in question with knowledge of the corruptness of its acts. Since, if it had in fact relied on Schreiber's allegedly erroneous and misleading advice, Saybolt [North America] would not have believed at the time that its misconduct was unlawful or corrupt, it could never have made this admission at its allocution or, indeed, entered its guilty plea at all
 
 
 [145]
 F.Supp.2d at 357 (citations omitted)
 
 
 [5]
 "Whoever — (1) ... corruptly gives, offers or promises anything of value to any public official... with intent — (A) to influence any official act ... shall be fined ... or imprisoned...." 18 U.S.C. § 201(b)
 
 
 [6]
 "Whoever — (1) corruptly gives, offers, or promises anything of value to any person, with intent to influence or reward an officer, director, employee, agent, or attorney of a financial institution ... shall be fined ... or imprisoned...." 18 U.S.C. § 215(a)
 
 
 [7]
 Compare 15 U.S.C. § 78dd-2(a) ("corruptly in furtherance of an offer, payment, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value to — (1) any foreign official for purposes of — (A)(i) influencing any act or decision of such foreign official in his official capacity, (ii) inducing such foreign official to do or omit to do any act in violation of the lawful duty of such official"), with 18 U.S.C. § 201(b)(1) ("corruptly gives, offers or promises anything of value to any public official ..., with intent — (A) to influence any official act; or ... (C) to induce such public official or such person who has been selected to be a public official to do or omit to do any act in violation of the lawful duty of such official or person").
 
 
 [8]
 "With the exception of strict liability crimes, crimes require general intent, which ordinarily is at least an intention to make the bodily movement which constitutes the act which the crime requires, in order for criminal liability to attach."United States v. Sewell, 252 F.3d 647, 650 (2d Cir.) (citation and internal quotation marks omitted), cert. denied, 534 U.S. 968, 122 S.Ct. 382, 151 L.Ed.2d 291 (2001). We have no reason to think that Congress intended the FCPA to be a "strict liability" crime.
 
 
 [9]
 The defendants cite an Eighth Circuit decision inUnited States v. Liebo, 923 F.2d 1308, 1312 (8th Cir.1991), approving a jury instruction that defined the FCPA's "corruptly" element as denoting an "unlawful" intent. For the reasons we set forth, we do not think that acting "corruptly" means acting with knowledge that the action violates the FCPA. And in light of the FCPA's legislative history, and the case law interpreting the word "corruptly" in the federal bribery statute, we think that the most likely explanation for the presence of the word "unlawful" in the jury instruction in Liebo is that the trial court wanted to indicate that the defendant violated the FCPA only if he sought to induce a foreign official to act "unlawfully" by misusing his position.
 
 
 [10]
 Saybolt North America also pleaded guilty to a charge of conspiring to violate the FCPA. However, the federal conspiracy statute, 18 U.S.C. § 371, imposes no greatermens rea than that necessary to commit the substantive offense. See United States v. Feola, 420 U.S. 671, 686-92, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975); United States v. Cohen, 260 F.3d 68, 72-73 (2d Cir.2001), cert. denied, 536 U.S. 922, 122 S.Ct. 2587, 153 L.Ed.2d 777 (2002). Saybolt North America's guilty plea to the charge of conspiring to violate the FCPA thus does not alter our analysis.
 
 
 [11]
 The plaintiff concedes that it is in privity with Saybolt North America for these purposes
 
 
 [12]
 The plaintiff also argues that Mead's conviction cannot preclude its malpractice action because the relevant issue was neither "actually litigated and actually decided" in Mead's criminal trial nor "necessary to support a valid and final judgment on the merits."See Thalbo, 171 F.3d at 109 (citation omitted). Because we conclude that Mead was not in privity with Saybolt North America at the time of his trial, we need not and do not consider whether collateral estoppel is inapplicable for that independent reason.
 
 
 [13]
 These two methods of establishing privity can also be combined, i.e., privity can be found if a person's fiduciary or agent exercised actual control over the presentation of a party's case in the previous litigationSee, e.g., Alpert's Newspaper Delivery, Inc. v. the New York Times Co., 876 F.2d 266, 270 (2d Cir.1989) (finding privity where a person's financing and litigation strategy were provided by the same "mastermind" who controlled the previous litigation).
 
 
 [14]
 In addition to being compelled by the right to due process, this result follows from our "actual control" line of cases, in which we have found privity not simply because a person exercised control at any point over a party to a previous proceeding, but only where the person "controlled or substantially participated in the control of thepresentation on behalf of a party to the prior action." Central Hudson, 56 F.3d at 368 (emphasis added and internal quotation marks and punctuation omitted).
 
 
 [15]
 The only exception to this rule is where "the authority granted to the agent is a `power given as security,'" a circumstance not present here because Mead did not hold the agency power "for the benefit of the power holder or a third person."Gov't Guar. Fund, 95 F.3d at 300.
 
 
 [16]
 The defendants argue that our decision inNew York v. Julius Nasso Concrete Corp., 202 F.3d 82 (2d Cir.2000), requires us to find privity between Saybolt North America and Mead for these purposes. Julius Nasso was similar to the instant case in that it was a civil matter in which collateral estoppel was asserted against certain corporations based on the previous criminal convictions of individual defendants associated with the corporations. Id. at 86-87. In one sentence, without explanation, we found privity for collateral estoppel purposes. Id. at 87. The corporate defendants in that case, however, do not appear to have argued that there was an absence of privity, but only that the issues presented by the civil case were not necessarily decided in the previous criminal proceedings. See id. at 86-87; New York v. Cedar Park Concrete Corp., Nos. 85 Civ. 1887, 86 Civ. 8128, 1997 WL 306909, at *7, 1997 U.S. Dist. LEXIS 6918, at *23 (S.D.N.Y. March 21, 1997), aff'd in part, vacated and remanded in part on other grounds, 202 F.3d at 89. There was also a suggestion in the district court's decision in Cedar Park Concrete, which we affirmed in part in Julius Nasso, that the corporate defendants were merely shell corporations manipulated by the individual criminal defendants, who were members of New York's five organized-crime families. See, e.g., Cedar Park Concrete, 1997 WL 306909, at *4, 1997 U.S. Dist. LEXIS 6918, at *14-*15. That would help explain not only the court's ruling, but the parties' failure to challenge privity. There is no such suggestion in the case before us.
 
 
 [17]
 Schreiber's co-defendant, the law firm Walter, Conston, has asked us to affirm the district court's judgment with respect to it on the alternative grounds that the plaintiff has failed to show that Schreiber was acting on behalf of the law firm with respect to Saybolt North America. Yet the district court did not reach this separate issue and the record is not sufficient for us to do so comfortably in the first instance. We therefore decline to address it for the first time on appeal